711 A.2d 273

JOSEPH B. PARUSZEWSKI, PLAINTIFF–APPELLANT, v. TOWN-SHIP OF ELSINBORO, TOWNSHIP COMMITTEE OF TOWN-SHIP OF ELSINBORO AND THE ZONING BOARD OF ADJUST-MENT FOR THE TOWNSHIP OF ELSINBORO, DEFENDANTS–RESPONDENTS.

Argued January 21, 1998—Decided May 18, 1998.

46

*Patrick F. McAndrew,* argued the cause for appellant.

*John G. Hoffman,* argued the cause for respondents.

*William John Kearns, Jr.,* argued the cause for *amici curiae* New Jersey State League of Municipalities and New Jersey Institute of Municipal Attorneys (*Kearns, Vassallo, Guest & Kearns,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

· This appeal presents the question of whether the governing body of a municipality may appear through its attorney before the municipal zoning board of adjustment to oppose a nonconforming use certification application. Specifically, we consider whether the governing body has standing to appear before the zoning board through its attorney and whether the appearance of the township attorney creates an impermissible conflict of interest.

I

The Paruszewski family owns a farm in Elsinboro Township, a portion of which had been used as an airfield on a limited basis. In November 1989, the Zoning Officer for Elsinboro Township directed Raymond Paruszewski, the owner of the farm and father of petitioner Joseph Paruszewski ("petitioner"), to cease using his property as an airstrip until he acquired the necessary variances and approvals. On June 27, 1991, petitioner filed applications for a landing area with the Federal Aviation Administration and for an aeronautical facility license with the New Jersey Department of Transportation–Division of Aeronautics ("DOA"). Petitioner also filed a conditional use application with the Elsinboro Township

Planning Board ("Planning Board") because the DOA application required local approvals.

In October 1991, the Planning Board reviewed petitioner's application, finding that although the Paruszewski farm was located in a zoning district that permitted basic utility airports as a conditional use, the applicable ordinance neither defined "basic utility airport" nor listed the requisite conditions that an applicant must satisfy in order to be granted a conditional use permit. The Planning Board referred the matter to the Township Committee, requesting that it "resolve this problem by adopting a zoning ordinance dealing specifically with basic utility airports and the conditions, if any, for approval of same." In response, the Township Committee retained a professional planner and relied upon his opinion in deciding that the elimination of basic utility airports as a conditional use was in the public's best interest. The Township Committee adopted Ordinance 42–1 to that effect. Consequently, the Planning Board denied petitioner's application for a conditional use permit.

In February 1992, Paruszewski petitioned the DOA to reconsider his application for an aeronautical facility license. The DOA, in turn, referred the matter to the Office of Administrative Law for a full evidentiary hearing. On August 3, 1994, the presiding Administrative Law Judge placed the case on the inactive list, allowing petitioner time to obtain a nonconforming use certification or a use variance from the Elsinboro Township Zoning Board of Adjustment ("Zoning Board" or "Board"). On August 19, 1994, petitioner filed an application with the Zoning Board for certification that use of the Paruszewski farm as an airfield was a pre-existing nonconforming use.

On September 6, 1994, in a closed session, the Township Committee, as the governing body of the municipality, decided to oppose petitioner's application to the Zoning Board. To represent its interests, the Committee directed the Township Attorney, John Hoffman ("Hoffman"), to appear at the Zoning Board hearing. Hoffman's task was to present evidence establishing that the use

of the Paruszewski farm as an airfield was not a previous noncon-forming use, or alternatively, that it had been abandoned. The Township Committee's position was based on the professional planner's opinion that operating an airfield on the farm would be detrimental to the Township's master plan and zoning scheme.

The Board held hearings on petitioner's application on September 21 and October 19, 1994. At the initial hearing, the Zoning Board's attorney described petitioner's application; ensured that no voting member had a conflict of interest; introduced and explained the proposed role of Hoffman, the Township Attorney; and outlined the applicable law regarding nonconforming uses. Subsequently, Hoffman explained that he was appearing on behalf of the governing body and on behalf of those citizens who opposed petitioner's application. However, there was no indication that he had actually been retained by any private citizens. Hoffman then examined witnesses and submitted oral and written arguments on behalf of the governing body in opposition to petitioner's applica-tion. Petitioner did not object to the participation of Hoffman at the hearing. Following the testimony of petitioner, his father, and several of their neighbors, the Zoning Board concluded that the farm had been used as an airstrip only sporadically since the Paruszewski family acquired the land in 1950. Therefore, the use "did not rise to the level of [an] accessory use" and was "not a preexisting, non-conforming use."

On December 27, 1994, petitioner filed a complaint in lieu of prerogative writs against the Township Committee, the Zoning Board, and the Township of Elsinboro. On April 16, 1996, the Law Division granted defendants' motion for summary judgment, dismissing petitioner's complaint with prejudice. The Appellate Division affirmed. 297 *N.J.Super.* 531, 688 *A.*2d 662 (1997). Relying on *Township of Dover v. Board of Adjustment,* 158 *N.J.Super.* 401, 386 *A.*2d 421 (App.Div.1978), and *Zoning Bd. of Adjustment v. Datchko,* 142 *N.J.Super.* 501, 362 *A.*2d 55 (App.Div. 1976), the panel found that "a substantial impairment of the zoning plan," which constituted an "arrogation of authority" would result

in a governing body having standing and the right to sue. 297 *N.J.Super.* at 541, 688 *A.*2d 662. The court reasoned that implicit in the *Dover* court's recognition of the governing body's right to sue the zoning board in some circumstances "is the governing body's additional right to make an appropriate record before the zoning board." *Id.* at 542, 688 *A.*2d 662. Therefore, the court held that the governing body acted "wholly within its rights in appearing before the zoning board to lay before that body its views with respect to the merits of plaintiff's application." *Id.* at 543, 688 *A.*2d 662. In addition, the court held that Hoffman's appearance did not present a reversible conflict of interest. *Id.* at 539, 688 *A.*2d 662.

This Court granted certification, 149 *N.J.* 406, 694 *A.*2d 192 (1997), limited to the issues arising out of the Township Attorney's appearance before the Zoning Board in opposition to petitioner's nonconforming use application. Like the trial court and Appellate Division below, we conclude that the governing body had standing to oppose petitioner's nonconforming use certification application before the Zoning Board and that the appearance of the Township Attorney did not present a reversible conflict of interest. Thus, we affirm.

## II

We first outline the relevant constitutional and statutory provisions that provide a framework for determining whether the governing body had standing and the authority to appear before the zoning board in opposition to the nonconforming use certification petition. The governing body, defined as "the chief legislative body of the municipality," *N.J.S.A.* 40:55D-4, is vested with broad power by the state constitution and statutes. Article IV, Section 7, paragraph 11 of the New Jersey Constitution provides:

> The provisions of this Constitution and of any law concerning municipal corporations formed for local government ... shall be liberally construed in their favor. The powers of ... such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the

powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law.

Courts have consistently read this constitutional provision as a mandate to liberally construe powers granted to municipalities, either by express terms or by implication, in their favor. *Township of Berkeley Heights v. Board of Adjustment*, 144 *N.J.Super.* 291, 296, 365 *A.*2d 237 (Law Div.1976) (finding that that constitutional provision compels the courts " 'to interpret statutes liberally in favor of the existence of local power to deal with local needs.' ") (quoting *Whelan v. New Jersey Power & Light Co.*, 45 *N.J.* 237, 251, 212 *A.*2d 136 (1965)); *see also Fanelli v. City of Trenton*, 135 *N.J.* 582, 591, 641 *A.*2d 541 (1994) (holding that Legislature's delegation of authority to municipalities is to be interpreted broadly).

Under the general powers granted by Article III of the New Jersey Constitution, the legislative branch of government has been granted the authority to regulate land use. *See* William M. Cox, *New Jersey Zoning and Land Use Administration* § 1–1 (1997) [hereinafter *New Jersey Zoning* ]. Article IV, Section 6, paragraph 2 of the New Jersey Constitution authorizes the Legislature to delegate some of that regulatory power to municipalities. Pursuant to that authority, the Legislature enacted the Municipal Land Use Law of 1975 ("MLUL" or "Law"), *N.J.S.A.* 40:55D–1 to –136. The MLUL grants townships exclusive powers to enforce the Law, *N.J.S.A.* 40:55D–18, and to adopt and enforce zoning ordinances, *N.J.S.A.* 40:55D–62. *See also Washington Township Zoning Bd. v. Washington Township Planning Bd.*, 217 *N.J.Super.* 215, 221, 525 *A.*2d 331 (App.Div.) (governing body's power to enforce provisions of MLUL is exclusive), *certif. denied*, 108 *N.J.* 218, 528 *A.*2d 36 (1987); *Dover, supra*, 158 *N.J.Super.* at 411, 386 *A.*2d 421 (recognizing that township, through its governing body, is empowered "to establish ..: the essential land use character of the municipality"). In addition, townships are authorized to employ and compensate "such officials and employees ... as may be deemed necessary for the efficient conduct of the affairs of the municipality." *N.J.S.A.* 40:48–1.

Under the MLUL, municipalities are charged with the general goal of "guid[ing] the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare." *N.J.S.A.* 40:55D–2(a). To accomplish that goal, the MLUL delegates power to three municipal agencies—the governing body, the planning board, and the zoning board of adjustment ("zoning board" or "board of adjustment")—that work to develop, enforce, and grant relief from the municipality zoning scheme. *New Jersey Zoning, supra,* § 1–2.

*N.J.S.A.* 40:55D–18 determines which parties have standing to institute actions to review violations of the MLUL or local zoning ordinances, namely, "the proper local authorities of the municipality or an interested party." Generally, the "proper local authority" is the municipal zoning officer. *Borough of Bay Head v. MacFarlan,* 209 *N.J.Super.* 134, 139, 506 *A.*2d 1299 (App.Div. 1986). An "interested party" is defined broadly to include "any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under th[e] [MLUL]." *N.J.S.A.* 40:55D–4; *see also Home Builders League of S. Jersey, Inc. v. Township of Berlin,* 81 *N.J.* 127, 131–135, 405 *A.*2d 381 (1979) (recognizing state's liberal approach to standing in zoning cases and MLUL's broad definition of "interested party").

### III

Although the governing body is the chief municipal legislative body, *N.J.S.A.* 40:55D–4, and is empowered to enact zoning ordinances, *N.J.S.A.* 40:55D–62, its power is tempered by the ability of the planning board and board of adjustment to permit deviation from those ordinances in appropriate circumstances. *See N.J.S.A.* 40:55D–25 (listing powers of planning board); *N.J.S.A.* 40:55D–70 (listing powers of board of adjustment).

The MLUL prohibits the governing body from infringing on those powers expressly reserved to the planning and zoning boards. *N.J.S.A.* 40:55D–20 ("Any power expressly authorized by

this act to be exercised by [the] (1) planning board or (2) board of adjustment shall not be exercised by any other body, except as otherwise provided in this act."). The planning and zoning boards are not only protected by statute; courts have also protected their powers to rule on zoning and planning matters from "adulterat[ion] or interfere[nce] . . . by acts of local governing bodies or officials." *Diller & Fisher Co. v. Architectural Review Bd.*, 246 *N.J.Super.* 362, 367–68, 587 *A.*2d 674 (Law Div.1990) (holding ordinance creating architectural review board impermissible attempt by governing body to "exercis[e] planning and zoning powers"); *see also Cronin v. Township Comm.*, 239 *N.J.Super.* 611, 618, 571 *A.*2d 1354 (App.Div.1990) (holding that governing body is without power to certify nonconforming use).

▪ We are specifically concerned with the powers of the board of adjustment that are more limited than those of the governing body. Because it is a "creature[ ] of statute[, it] . . . may exercise *only* those powers granted by statute." *New Jersey Zoning, supra,* § 4–2.1. *N.J.S.A.* 40:55D–70 ("Section 70") outlines the powers of the zoning board. The zoning board has the power to "[h]ear and decide appeals" of decisions by the municipal zoning officer. *N.J.S.A.* 40:55D–70(a). It may also "[h]ear and decide requests for interpretation of the zoning map or ordinance or for decisions upon other special questions." *N.J.S.A.* 40:55D–70(b). Furthermore, the MLUL vests the zoning board with the power to grant variances. *N.J.S.A.* 40:55D–70(c), –70(d). The power to issue nonconforming use certifications is given solely to the zoning board. *N.J.S.A.* 40:55D–68 ("Section 68"); *N.J.S.A.* 40:55D–20.

▪ The governing body has no power to review a zoning board's decision with respect to certification of a pre-existing nonconforming use pursuant to Section 68. Any review of the board's decision is by way of action in lieu of prerogative writs. *R.* 4:69–1. Because the zoning board is a quasi-judicial board,

[o]n appeal, a reviewing court may not consider *de novo* factual disputes decided by the boards nor substitute its judgment for that of the board. The questions on appeal are only whether or not the action of the board was arbitrary, capricious or

patently unreasonable, and whether it acted properly under the statute, that is, in accordance with the statutory standard.

[*New Jersey Zoning, supra*, § 4–4.3.]

By giving exclusive authority over nonconforming use certifications to the zoning board, the Legislature evidenced its intent that the governing body generally should not interfere with or influence the zoning board's decision with respect to nonconforming uses. Stated another way, the Legislature did not intend the governing body to infringe on the prerogatives of the zoning board. That board "is particularly well equipped to address nonconforming use disputes" due to its ready access to "[l]ocal insight and local knowledge," and its duty to interpret the zoning regulations pursuant to Section 70. *Bell v. Township of Bass River*, 196 *N.J.Super.* 304, 314, 482 *A.2d* 208 (Law Div.1984).

Nevertheless, the MLUL does authorize a township to appear before the zoning board in at least two situations: (1) when the application involves development of municipal property, and (2) when the municipality owns property within 200 feet of the property that is the subject of an application to the zoning board, *N.J.S.A.* 40:55D–12. Case law provides examples of other instances in which it is appropriate for the governing body to appear before the zoning board. In *Dover, supra*, the Appellate Division analyzed the relationship between the governing body and the zoning board in the following terms:

[T]he board of adjustment is an independent administrative agency whose powers stem directly from the Legislature and hence are not subject to abridgement, circumscription, extension or other modification by the governing body.... [A] necessary corollary of that principle is that ordinarily the manner in which the board exercises its exclusive statutory power is not subject to monitoring by the governing body and is therefore immune not only to direct interference by the governing body but also to the indirect interference of an action in lieu of prerogative writs brought by the governing body seeking judicial review of the board's determinations.... We are therefore satisfied that so long as the board acts within the ambit of its authority, whether it has acted wisely or not, and whether it has acted correctly or not, are not matters which the governing body itself should be able to raise.

An arrogation of authority is, however, quite a different matter and, in our view, is necessarily and obviously actionable by the body whose authority has been directly infringed upon.

[158 *N.J.Super.* at 408–09, 386 *A.2d* 421 (citations omitted).]

In *Datchko, supra,* the court observed that the township and the zoning board "have a substantial public interest in preserving the integrity of the zoning ordinance.... Judicial relief by [an action in lieu of prerogative writs] is available to [the township and zoning board] to rectify what may reasonably be considered a substantial impairment of the zoning plan." 142 *N.J.Super.* at 508–09, 362 *A.2d* 55. Furthermore, in cases that concern a major development that would affect a substantial part of the municipality, it is often necessary that an adequate record be provided for the reviewing court. As the court in *Berkeley Heights* observed:

> There is no question that these hearings and the proofs presented are critical stages in the application process affecting the land use scheme of the entire municipality. The record is created at this time and may not be amplified throughout the appellate process at council or in court. This makes it absolutely necessary that interested parties become involved at the earliest stage of the application process and possess the requisite skill and financial support to adequately protect their interests. This function may well be served by the municipal public advocate.
>
> [144 *N.J.Super.* at 298, 365 *A.2d* 237 (citation omitted).]

Most people in a community do not have the knowledge or the resources to prepare an adequate record to challenge a major development. In appropriate cases, the appearance of a township attorney, on behalf of the municipality's interest, "provides a means by which the public interest is represented in proceedings of substantial public importance." *Id.* at 296, 365 *A.2d* 237. *But see Washington Township Zoning Bd., supra,* 217 *N.J.Super.* at 222–23, 525 *A.2d* 331 (holding that zoning board could not bring action in lieu of prerogative writs against planning board from the same municipality and distinguishing *Dover, supra,* because facts did not involve "a 'wholesale' invasion of a governing body's paramount legislative powers over the zoning scheme of a municipality" but only "a zoning board's claim that the planning board was wrong in treating an application as a hardship rather than a special reasons variance").

The use of property as an airstrip and the potential negative impact of such a use on the surrounding area poses a major

concern to the entire community. *Tanis v. Township of Hampton*, 306 *N.J.Super.* 588, 607–08, 704 *A.2d* 62 (App.Div.1997). In *Garden State Farms, Inc. v. Bay*, 77 *N.J.* 439, 446–51, 390 *A.2d* 1177 (1978), we held that a local zoning ordinance barring heliports was not preempted by federal and state law, and must be considered by the New Jersey Department of Transportation before the Commissioner of Transportation ("Commissioner") acts on heliport applications. Indeed, we found that

> a failure on the Commissioner's part to weigh conscientiously local interests, to examine carefully whether the proposed avigation facility is compatible with the surrounding land uses and to consult the local ordinances and authorities in making its licensing decision would constitute an abuse of discretion.

> [*Id.* at 456, 390 *A.2d* 1177.]

*See also Tanis, supra,* 306 *N.J.Super.* at 599, 704 *A.2d* 62 (holding that zoning board's authority to regulate and rule on landowner's proposed use of farmland property for private landing strip was not preempted by federal and state law, and that Commissioner must consider whether issuance of license " 'would be consistent with public health, safety and welfare' ") (quoting *N.J.A.C.* 16:54–2.5(a)). In matters of such importance to the township, it is essential that a proper record be made for presentation to the appropriate administrative agency.

In this case, the professional planner engaged by the Township determined that the certification of petitioner's farm as an airstrip would be contrary to the public interest and to the detriment of the Township's master plan and zoning scheme. Under those unique circumstances, the Township of Elsinboro had the authority to oppose the application through its attorney's appearance before the Zoning Board.

## IV

Concluding that the Township had standing to appear before the Zoning Board through its attorney, we now address the issue whether such an appearance created an impermissible conflict of interest. We conclude that it did not.

Derived from the common law, actions in lieu of prerogative writs vest courts with jurisdiction to review the actions of municipal agencies to ensure that such agencies are acting within their jurisdiction and "according to law." *Wyzykowski v. Rizas,* 132 *N.J.* 509, 522, 626 *A.*2d 406 (1993). "Among the guarantees of the common law is the entitlement to a fair and impartial tribunal." *Ibid.* Because of its origins, "common-law principles" generally govern actions in lieu of prerogative writs challenging municipal action on conflict of interest grounds. *Id.* at 523, 626 *A.*2d 406. "At common law '[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body.'" *Ibid.* (alteration in original) (quoting *Scotch Plains–Fanwood Bd. of Educ. v. Syvertsen,* 251 *N.J.Super.* 566, 568, 598 *A.*2d 1232 (App. Div.1991)). That common law principle has been codified by the MLUL. *N.J.S.A.* 40:55D–23(b) (providing that no member of planning board may "act on any matter in which he has, either directly or indirectly, any personal or financial interest"); *N.J.S.A.* 40:55D–69 (same, zoning board of adjustment).

" '[W]hether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case.'" *Rizas, supra,* 132 *N.J.* at 523, 626 *A.*2d 406 (quoting *Van Itallie v. Borough of Franklin Lakes,* 28 *N.J.* 258, 268, 146 *A.*2d 111 (1958)). In conducting its inquiry, the Court must strike a delicate balance:

> [C]ourts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism. But in doing so they must also be mindful that to abrogate a municipal action at the suggestion that some remote and nebulous interest is present, would be to unjustifiably deprive a municipality in many important instances of the services of its duly elected or appointed officials.
>
> [*Id.* at 523–24, 626 *A.*2d 406 (quoting *Van Itallie, supra,* 28 *N.J.* at 269, 146 *A.*2d 111).]

"The determinations of municipal officials should not be approached with a general feeling of suspicion, for as Justice Holmes has said, 'Universal distrust creates universal incompetency.'"

*Van Itallie, supra,* 28 *N.J.* at 269, 146 *A.*2d 111 (quoting *Graham v. United States,* 231 *U.S.* 474, 480, 34 *S.Ct.* 148, 151, 58 *L. Ed.* 319, 324 (1913)). Although there need be only the "potential for conflict" to justify disqualification, " '[t]here cannot be a conflict of interest where there do not exist, realistically, contradictory desires tugging the official in opposite directions.' " *Rizas, supra,* 132 *N.J.* at 524, 626 *A.*2d 406 (alteration in original) (quoting *LaRue v. Township of E. Brunswick,* 68 *N.J.Super.* 435, 448, 172 *A.*2d 691 (App.Div.1961)). *But see South Brunswick Assocs. v. Township Council,* 285 *N.J.Super.* 377, 382–84, 667 *A.*2d 1 (Law Div.1994) (holding township council's president could not appear as advocate before zoning board and subsequently participate in quasi-judicial review of same matter).

In *Rizas, supra,* this Court outlined the four circumstances in which a conflict of interest will be found:

(1) "Direct pecuniary interests," when an official votes on a matter benefitting the official's own property or affording a direct financial gain; (2) "Indirect pecuniary interests," when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but a matter of great importance . . .; [and] (4) "Indirect Personal Interest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.

[*Id.* at 525–26, 626 *A.*2d 406 (citing Michael A. Pane, *Conflict of Interest: Sometimes a Confusing Maze,* 2 *New Jersey Municipalities* 8–9 (March 1980)).]

The Court applied those categories to the issue in *Rizas, supra,* of whether a mayor could appear as an applicant before his municipality's zoning board. 132 *N.J.* at 526, 626 *A.*2d 406. The Appellate Division had found a conflict, based on the mayor's active status, which created the "appearance of impropriety." *Ibid.; see Wyzykowski v. Rizas,* 254 *N.J.Super.* 28, 35–36, 603 *A.*2d 53 (App.Div.1992). This Court, however, reversed.

Of relevance here, the *Rizas* Court began its conflict of interest analysis by definitively stating that "[t]he status of planning board members appointed by the mayor d[id] not fit within any of those categories." *Rizas, supra,* 132 *N.J.* at 526, 626 *A.*2d

406. Likewise, in this case, the mere fact that the zoning board members were appointed by the Township did not disqualify them from considering the Township Attorney's position with regard to petitioner's application. Although petitioner argues that the members of the Zoning Board had either an indirect pecuniary or indirect personal interest based solely on their status as members of the board, this Court specifically eschewed that type of categorical disqualification in *Rizas*. Simply because the members of the Zoning Board were appointed by the Township does not diminish their ability to act independently. Thus, under the *Rizas* conflict of interest analysis, there is no conflict presented.

The *Rizas* Court also considered the lower court's perception of "an appearance of impropriety" that existed while the mayor was still in office. *Ibid.* Observing that the issue presented was one of great public concern, the Court explained, "[t]he issue is disturbing because of the intuitive concern that citizens in the community may fear a betrayal of the public trust." *Id.* at 527, 626 *A.2d* 406. Nevertheless, the Court concluded that the mayor was not prohibited from exercising his ordinary right as a citizen to file an application before the planning board. *Id.* at 527, 626 *A.2d* 406. This case presents no such potential conflict. Here, the Township Attorney was advocating a position not for his own private interest, but for the public's interest. The Township Committee had no power to review the Zoning Board's decision with respect to certification of a nonconforming use. The ultimate decision regarding petitioner's application rested at all times with the Zoning Board. The Township Attorney merely appeared in support of the Township's decision to oppose petitioner's application. We therefore conclude that the appearance of Hoffman did not create a conflict of interest.

That conclusion comports with the only reported New Jersey case that addresses whether a governing body may appoint an attorney to appear on its behalf before the zoning board in opposition to a nonconforming use application. *Berkeley Heights, supra,* 144 *N.J.Super.* at 295–98, 365 *A.2d* 237. In *Berkeley*

*Heights, supra,* the Law Division held that a governing body could appoint an attorney to serve as a public advocate for the purpose of appearing before the zoning and planning boards "to represent the public interest of the township at large." 144 *N.J.Super.* at 294–95, 365 *A.*2d 237. After outlining the relevant constitutional, statutory, and judicial framework, the court concluded that the creation of a public advocate was "a lawful exercise of [the municipality's] delegated powers." *Id.* at 297, 365 *A.*2d 237.

Finally, although not before us, we observe that the Zoning Board's rejection of petitioner's application for certification of a nonconforming use was based upon substantial evidence in the record before the Board. *Kramer v. Board of Adjustment,* 45 *N.J.* 268, 296–97, 212 *A.*2d 153 (1965).

## V

In addition to the specifically authorized appearances before the zoning board by a governing body concerning its property, we expect that the governing body of a municipality would appear at a hearing on a nonconforming use application only in those rare cases where the board has arrogated the governing body's authority, *see Township of Stafford v. Stafford Township Zoning Bd. of Adjustment,* 154 *N.J.* 62, 711 *A.*2d 282 (1998), and where there is a substantial public interest in protecting the integrity of the master plan or zoning scheme.

Because an airstrip has such a significant effect on the surrounding area, Hoffman's appearance did not violate the MLUL's grant of exclusive power to the Zoning Board to determine petitioner's nonconforming use certification application.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.