864 A.2d 1184 (2005)
374 N.J. Super. 437
The CEREBRAL PALSY CENTER, BERGEN COUNTY, INC., Trading as Children's Therapy Center, Plaintiff-Appellant,
v.
MAYOR AND COUNCIL OF the BOROUGH OF FAIR LAWN, Borough of Fair Lawn, and Fair Lawn Zoning Board of Adjustment, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 2004.
Decided January 27, 2005.
*1185 Andrew J. Karas, Fairlawn, argued the cause for appellant (Feitlin, Youngman, Karas & Youngman, attorneys; Mr. Karas, on the brief).
Richard A. Lustgarten, West Orange, argued the cause for respondent Mayor and Council of the Borough of Fair Lawn and Borough of Fair Lawn.
Respondent Fair Lawn Zoning Board of Adjustment relies on the brief submitted by respondent Mayor and Council of the Borough of Fair Lawn and the Borough of Fair Lawn (Robert C. Matule, Hoboken, attorney).
Lloyd H. Tubman, Woodbridge, argued the cause for amicus curiae New Jersey Chapter of National Association of Industrial and Office Properties (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys; Mr. Tubman, of counsel and on the brief; Steven Firkser, on the brief).
William F. Hyland, Jr., Voorhees, argued the cause for amicus curiae New Jersey Builders Association (Ballard Spahr Andrews & Ingersoll, attorneys; Richard M. Hluchan, of counsel; Mr. Hyland, Michelle A. Ducellier, and Lauren A. Beetle, on the brief).
Before Judges WEFING, FALL and PAYNE.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Plaintiff, The Cerebral Palsy Center, Bergen County, Inc., trading as Children's Therapy Center ("Center"), appeals from the trial court order dismissing its complaint in which it challenged the legality of a Fair Lawn ordinance. After reviewing the record in light of the contentions advanced on appeal, we reverse.
Fair Lawn has adopted an ordinance, § 125-60.1 of the Land Development chapter of its municipal code, establishing the position of Public Advocate, to be appointed *1186 by the municipal council. Fair Lawn Code, § 125-60.1 (July 15, 2000). The ordinance creates separate positions of Public Advocate for Fair Lawn's Planning Board and its Zoning Board of Adjustment. Because the ordinance gives each position identical responsibility and authority, there is no need to distinguish between the two in our analysis of the issues.
Under Subsection C of the ordinance, the Public Advocate is authorized to appear before the respective boards, as well as before other federal, state, county and municipal courts and agencies "in proceedings of substantial public importance in which he or she shall determine, in his or her sole discretion, subject to this section, to warrant representation and advocacy." § 125-60.1(C).
Subsection E of the ordinance defines matters of substantial public importance in the following manner.
(1) Substantial public importance shall be defined or limited to applications where the applicant is seeking relief in any one of the following areas, provided that the application also affects the health, safety or general welfare of the Borough of Fair Lawn or its population:
(a) Applicant is seeking a use variance.
(b) Applicant is seeking a major subdivision.
(c) Applicant seeks three or more variances.
(d) Applicant seeks a variance for parking.
(e) Applicant seeks a variance within a SID.
(f) Application of any nature involving property which is contiguous to or proximate to land located in any district adjoining parkland, wetlands or a facility owned by the municipality or the Board of Education.
(g) Any application in which the applicant seeks to vacate a street, road, right-of-way or similarly defined thoroughfare.
(h) Any application in which the applicant seeks to create a street, road, right-of-way or similarly defined thoroughfare, even if on private property not then to be made a borough street or road.
(i) Application where a variance for density is being sought.
(j) Application that has been bifurcated, where one part of the bifurcated application seeks relief set forth in these subparagraphs.
[§ 125-60.1(E).]
The stated purpose of the ordinance, according to subsection H, is
to ensure that a full, fair and balanced record be made in such matters of substantial public importance ... so that such Boards ... will have the benefit of a fully developed record of the proceedings containing all of the testimony and evidence of a fair, unbiased and impartial decision ... and to ensure that the public interest, and not individual interests, will be adequately represented and better served.
[§ 125-60.1(H).]
In subsection G of the ordinance, the council noted its intent that the "resources of the Public Advocate be devoted to the maximum extent possible to ensuring adequate representation of the interests of those residents whose interests would otherwise be inadequately represented...." § 125-60.1(G).
Subsection C of the ordinance directs the Public Advocate to
review applications initially determined by objective criteria to potentially involve *1187 the Public Advocate; review and prepare documents and inspections of developments under construction to the extent that this section determines it to be beyond the scope of the expertise of the professionals normally utilized by the municipality....
[§ 125-60.1(C).]
This subsection also includes the following provision:
To the extent that such Public Advocate is required to review applications, prepare documents or otherwise perform services, it shall be at the cost and expense of the applicant and determined by multiplying the Public Advocate's hourly rate, which shall be established annually by ordinance, times the number of reasonable and necessary hours spent by the Public Advocate for such services.
[Ibid.]
Finally, subsection J of the ordinance authorizes the Public Advocate to "employ expert witnesses and pay appropriate compensation and expenses to employ the witnesses." § 125-60.1(J).
The Center is a non-profit corporation that provides physical therapy and educational services to children afflicted with cerebral palsy. It owns and operates a facility located in an R1-1 zone in Fair Lawn pursuant to a use variance it obtained in 1986. In September 2002 it filed an application seeking use and bulk variances to permit it to construct an addition to its facility. It sought the following variances: 1) to expand a non-conforming use; 2) to permit fifty-two parking spaces, instead of the eighty-three required; 3) to permit building coverage of 25.68%, as opposed to the 25% permitted; and 4) to permit impervious coverage of 33.20% as opposed to the 30% permitted. The Center included with its application the $900 filing fee and an escrow deposit of $3,500 toward the costs of reviewing its application. See N.J.S.A. 40:55D-53.2; Flama Const. Corp. v. Tp. of Franklin, 201 N.J.Super. 498, 493 A.2d 587 (App.Div.1985) (holding municipality may require filing fees to be paid into escrow to cover the cost of reviewing application).
The Zoning Board of Adjustment conducted hearings on the Center's application on various dates between November 2002 and April 2003. The Public Advocate appointed for the Board participated in those hearings and, as part of that participation, retained experts to review traffic and drainage issues with regard to the Center's application.
In late January 2003 the Public Advocate submitted an invoice for $1,485, for his services to date. The Center's counsel responded, objecting that the municipality had no authority to impose those fees upon his client. On March 3, 2003, the Board approved the invoices submitted on behalf of the experts retained by the Public Advocate to review and comment upon the application; their combined fees exceeded $16,000. On March 5, 2003, the Board notified the Center that it was required to make a further deposit to its escrow account to cover these fees and that a failure to do so would result in a dismissal without prejudice of its application.
On April 17, 2003, the Center filed an order to show cause and a complaint in lieu of prerogative writs challenging the fee-shifting provisions of Fair Lawn's ordinance. In conjunction with the order to show cause and complaint, the Center filed the certification of its executive director, who noted that the fee of the expert hired by the Public Advocate to perform drainage calculations nearly matched the fee the Center paid to its own expert to design the project and testify in support of the application. The parties thereafter agreed to a consent order under which the Center agreed to post the required escrow *1188 amounts, without prejudice to its right to contest the ordinance, and the Board would proceed to hear the merits of the Center's application in the normal course. The order also contained a schedule for determining the matter by way of summary judgment. By the time the motion for summary judgment was argued, the Public Advocate estimated his total fees and expenses would exceed $20,000. After briefing and oral argument, the trial court issued a written opinion in which it upheld the Fair Lawn ordinance.
The Center has appealed from the trial court order. Two amici have joined in the Center's challenge  New Jersey Builders Association and the New Jersey chapter of National Association of Industrial and Office Properties. The arguments on appeal are not addressed to the authority of the municipality in the first instance to create the position of Public Advocate. That authority was upheld in Township of Berkeley Heights v. Board of Adjustment, 144 N.J.Super. 291, 301, 365 A.2d 237 (Law Div.1976), and noted in Paruszewski v. Township of Elsinboro, 154 N.J. 45, 60-61, 711 A.2d 273 (1998). Their arguments focus, rather, on the fee-shifting provisions of the Fair Lawn ordinance, under which the applicant is not only responsible for the fees incurred by the particular board reviewing a particular application but must also shoulder the fees of the Public Advocate and the experts the advocate retains. After reviewing the record, we find it unnecessary to address those aspects of their respective arguments which challenge the fee-shifting provisions of this ordinance on constitutional and public policy grounds because we are satisfied that such provisions are fundamentally inconsistent with N.J.S.A. 40:55D-53.2 and, accordingly, are invalid.
The power to zone is an exercise of the police power. Riggs v. Tp. of Long Beach, 109 N.J. 601, 610, 538 A.2d 808 (1988)(setting aside the rezoning of certain waterfront property to a lower density to reduce its value prior to condemnation). A municipality possesses and can exercise that zoning authority only to the extent the Legislature has delegated it. Ibid. A zoning board of adjustment "may exercise only those powers granted by statute." Paruszewski, supra, 154 N.J. at 54, 711 A.2d 273 (emphasis in original). Accordingly, the validity of a municipal land use ordinance is governed by and measured under the Municipal Land Use Law, N.J.S.A. 40:55D-1 to  136. Rumson Estates v. Mayor of Fair Haven, 177 N.J. 338, 351, 828 A.2d 317 (2003). A "zoning ordinance must foster at least one of the stated purposes" of the Municipal Land Use Law. Id. at 350, 828 A.2d 317.
N.J.S.A. 40:55D-53.2 contains detailed directions regarding "payments to professionals for services rendered to the municipality or approving authority for review of applications for development, review and preparation of documents, inspection of improvements or other purposes." All payments for such services have to be "based upon a schedule established by resolution." N.J.S.A. 40:55D-53.2(a). The statute specifies:
The application review and inspection charges shall be limited only to professional charges for review of applications, review and preparation of documents and inspections of developments under construction and review by outside consultants when an application is of a nature beyond the scope of the expertise of the professionals normally utilized by the municipality. The only costs that shall be added to any such charges shall be actual out-of-pocket expenses of any such professionals or consultants including normal and typical expenses incurred in processing applications and inspecting improvements. The municipality or approving authority *1189 shall not bill the applicant, or charge any escrow account or deposit authorized under subsection b. of this section, for any municipal, clerical, or administrative functions, overhead expenses, meeting room charges, or any other municipal costs and expenses except as provided for in this section, nor shall a municipal professional add any such charges to his bill. If the salary, staff support and overhead for a municipal professional are provided by the municipality, the charge shall not exceed 200% of the sum of the products resulting from multiplying (1) the hourly base salary, which shall be established annually by ordinance, of each of the professionals by (2) the number of hours spent by the respective professional upon review of the application for development or inspection of the developer's improvements, as the case may be. For other professionals the charge shall be at the same rate as all other work of the same nature by the professional for the municipality when fees are not reimbursed or otherwise imposed on applicants or developers.
[Ibid.]
The statute sets forth the requirements for establishing the amounts that can be paid from the escrow account. For each payment requested from that escrow account, professionals must submit a voucher to the municipality's chief financial officer, with a copy to the applicant, identifying who performed the service, each date the services were performed, the hours spent to one-quarter hour increments, the hourly rate, and the expenses incurred. N.J.S.A. 40:55D-53.2(c). If a municipal employee provides the particular services, that employee must prepare and submit a monthly statement containing the same information. Ibid. The chief financial officer must prepare and send to the applicant an accounting of the escrow account's deposits, disbursements and cumulative balance, on a monthly basis if the monthly charges exceed $1,000, or on a quarterly basis if the monthly charges are less than $1,000. Ibid. The statute also contains procedures for closing the escrow account. N.J.S.A. 40:55D-53.2(d).
The statute's final two paragraphs are aimed at limiting the amount of fees that may be charged to an applicant.
e. All professional charges for review of an application for development, review and preparation of documents or inspection of improvements shall be reasonable and necessary, given the status and progress of the application or construction. Review fees shall be charged only in connection with an application for development presently pending before the approving authority or upon review of compliance with conditions of approval, or review of requests for modification or amendment made by the applicant. A professional shall not review items which are subject to approval by any State governmental agency and not under municipal jurisdiction except to the extent consultation with a State agency is necessary due to the effect of State approvals in the subdivision or site plan. Inspection fees shall be charged only for actual work shown on a subdivision or site plan or required by an approving resolution. Professionals inspecting improvements under construction shall charge only for inspections that are reasonably necessary to check the progress and quality of the work and such inspections shall be reasonably based on the approved development plans and documents.
f. If the municipality retains a different professional or consultant in the place of the professional originally responsible for development, application review, or inspection of improvements, the municipality or approving authority shall be *1190 responsible for all time and expenses of the new professional to become familiar with the application or the project, and the municipality or approving authority shall not bill the applicant or charge the deposit or the escrow account for any such services.
[N.J.S.A. 40:55D-53.2(e) and (f).]
We reject Fair Lawn's contention that its power to enact these fee-shifting portions of this ordinance may be found either expressly in N.J.S.A. 40:55D-53.2 or fairly implied thereunder. We have previously set forth in detail the structure of N.J.S.A. 40:55D-53.2. The statute by its terms is clearly limited to professional fees for services "rendered to the municipality or an approving authority." N.J.S.A. 40:55D-53.2(a). The statute was adopted almost twenty years after judicial approval of the concept of a municipal public advocate, Township of Berkeley Heights, supra, and yet the Legislature made no attempt to authorize the imposition of the fees and expenses of such a public advocate upon an applicant seeking land use approval within a municipality. Nothing within the statute's explicit language can be read to contain an express power to require an applicant to pay for the services of a public advocate to review and comment upon an application.
Nor do we consider that such a power can be fairly implied. We recognize, of course, that a municipality's powers "shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law." N.J. Const. art. IV, § 7, ¶ 11. Thus, the Legislature has conferred broad powers upon municipalities to adopt ordinances they deem
[n]ecessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants....
[N.J.S.A. 40:48-2.]
Ordinances are presumed to be valid and reasonable. Hutton Park Gardens v. Town Council, 68 N.J. 543, 564, 350 A.2d 1 (1975). The underlying policy and wisdom of a particular ordinance is the responsibility of the enacting municipal body, not the court reviewing it. Rumson Estates, supra, 177 N.J. at 350, 828 A.2d 317; Quick Chek Food Stores v. Tp. of Springfield, 83 N.J. 438, 447, 416 A.2d 840 (1980).
Nonetheless, we consider it inescapable that the fee-shifting portions of Fair Lawn's ordinance run counter to the legislative goals of N.J.S.A. 40:55D-53.2. The sponsor's statement and Assembly Housing Committee Statement to Assembly Bill No. 518, the bill embodying the statute's current language, stated: "This bill attempts to balance the municipality's need for expert and professional advice in the review of applications... with the need for controlling municipal professional fees." Statement A-518; Assembly Housing Committee Statement to A-518 (March 7, 1994). Both statements also pointed out that the bill "places limits on the charges against the deposits and escrow accounts of applicants by municipal professionals and consultants [.]" Similarly, the Senate Community Affairs Committee Statement to the bill described it as amending the Municipal Land Use Law by "placing limitations upon charges against deposits and escrow accounts of applicants established to cover the costs of the review and preparation of documents by municipal professionals and consultants[.]" Senate Community Affairs Committee, Statement to A-518 (February 6, 1996). This statute's legislative history clearly enunciates *1191 the goals of the Legislature in enacting this bill.
The fee-shifting technique adopted by Fair Lawn in this ordinance can serve only to increase the cost of applying for land-use approvals within the municipality while the purpose behind the statute was, as we have noted, to limit and control those expenses. The ordinance is thus fundamentally at odds with the statute.
We consider Fair Lawn's reliance on D.L. Real Estate Holdings v. Point Pleasant Beach Planning Board, 176 N.J. 126, 820 A.2d 1220 (2003) to be unavailing. In that case, the Supreme Court upheld a municipal ordinance that required that an application for final subdivision approval be filed within three years of the grant of preliminary subdivision approval. Id. at 128, 820 A.2d 1220. The ordinance also provided, on application, for two one-year extensions of that three-year deadline. Ibid. In upholding that ordinance, the Court noted that its terms essentially mirrored N.J.S.A. 40:55D-49 and were not at all inconsistent with the purposes of the Municipal Land Use Law. Id. at 133-34, 820 A.2d 1220. In our judgment, the Court's opinion in D.L. provides no basis to uphold the ordinance provisions challenged before us.
The order under review is reversed.