**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3090-23

IN THE MATTER OF SHAWN
GIORDANO, LACEY TOWNSHIP
BOARD OF EDUCATION, OCEAN
COUNTY.

_____

Argued June 3, 2025 – Decided June 18, 2025

Before Judges Sumners, Perez Friscia and Bergman.

On appeal from the New Jersey Commissioner of Education, Docket No. 9-8/23A.

Christopher J. Dasti argued the cause for appellant Shawn Giordano (Dasti & Staiger, attorneys; Christopher A. Khatami and Christopher J. Dasti, of counsel and on the briefs).

David L. Kalisky, Deputy Attorney General, argued the cause for respondent Commissioner of Education (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; David L. Kalisky, on the brief).

PER CURIAM

Appellant Shawn Giordano appeals from the May 15, 2024 New Jersey

Commissioner of Education's (Commissioner) final agency decision (FAD),

which found Giordano had violated N.J.S.A. 18A:12-24(b), -24.1(e), and (f) of the School Ethics Act (SEA), N.J.S.A. 18A:12-21 to -34, and issued the penalty of censure, affirming the School Ethics Commission's (SEC) adoption in part of the Administrative Law Judge's (ALJ) initial decision. Giordano argues he did not violate any SEA provisions. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm.

I.

We derive the following facts from the record. Giordano was elected to the Lacey Township Board of Education (Board) in 2013, served two three-year terms, and became the Board president in 2019. He lost reelection in 2019. Regina C. Discenza was elected to the Board in 2014 and served until her resignation in 2021. The Board's appointed attorney was Christopher Supsie, Esq.

The Board members received annual school ethics training pursuant to N.J.S.A. 18A:12-33(a) to (e). After an attorney with the New Jersey School Boards Association provided ethics training in January 2019, the Board

members acknowledged receiving the SEA and Code of Ethics for School Board Members and that they would "abide by the . . . Code."[1]

Giordano and Discenza harbored mutual animus and acrimony. Discenza campaigned against Giordano's reelection. Giordano acknowledged in his answers to interrogatories that on November 6, 2019, one day after Giordano lost reelection, he contacted Supsie and requested legal research as "a direct result of the questionable actions of . . . Discenza." Specifically, he admitted "as the [B]oard president," he requested Supsie provide a "legal opinion and leeway guidance" based on "concerns by the [B]oard members that . . . Discenza was violating ethics regulations by campaigning on school property and having her campaign materials clearly visible on her vehicle being parked on school property."

Supsie presented his firm's legal professional services bill to the Board for approval, which memorialized that the firm: began their legal research on November 6; spent over 33.90 hours reviewing a member's conduct; and billed the Board over $5,000 for the legal work performed. In December 2019,

---

[1] We note that in 2001, the Legislature amended the SEA to include the Code of Ethics for School Board Members (Code) embodied in N.J.S.A. 18A:12-24.1, which consists of ten specific affirmations all school board members commit to "abide by." The same process exists for reviewing alleged violations of the SEA and the Code. See N.J.S.A. 18A:12-29(a).

A-3090-23

Discenza received the bills for consideration and learned that Supsie, at Giordano's request, was conducting research against her as a Board member. The Board voted to approve Supsie's firm's legal bill at its December 6, 2019 meeting, but Discenza abstained.

On December 26, Giordano, along with several other Board members, filed a four-count complaint with the SEC alleging Discenza violated the SEA. On January 13, 2020, Discenza filed a ten-count complaint with the SEC alleging Giordano's request for research against Discenza had violated the SEA.[2]

In February, Giordano moved to dismiss the ethics complaint against him, which in May 2020, the SEC granted in part, dismissing counts five through ten. The SEC denied dismissal of: N.J.S.A. 18A:12-24(b) (count one); N.J.S.A. 18A:12-24.1(c) (count two); N.J.S.A. 18A:12-24.1(e) (count three); N.J.S.A. 18A:12-24.1(f) (count four). It also denied his request to determine Discenza's complaint was frivolous and order sanctions.

In June 2020, the SEC considered the remaining claims against Giordano, and in July, the SEC found probable cause that he committed the alleged violations. The SEC transferred the remaining claims against Giordano to the

---

[2] Discenza's complaint also alleged that other Board members violated the Code, but the SEC dismissed the claims against them.

A-3090-23

Office of Administrative Law (OAL) for a hearing before an ALJ.[3] The SEC's attorney assumed prosecution of the remaining claims pursuant to N.J.A.C. 6A:28-10.7(b)(1) (2020). On June 3, 2021, the ALJ consolidated the ethics complaints against Giordano and Discenza, and the parties thereafter conducted discovery.

On March 10, 2022, Giordano moved for summary decision, and the SEC thereafter cross-moved for summary decision. Pursuant to N.J.A.C. 1:1-12.5(b), the ALJ granted in part and denied in part the SEC's motion for a summary decision regarding the claims against Giordano. Conversely, the ALJ granted in part and denied in part Giordano's motion. The ALJ found no disputed material issue of fact that Giordano violated "N.J.S.A. 18A:12-24(b), -24.1(e), and (f)" and that dismissal of count three was warranted.

As a threshold matter, the ALJ determined that when viewing the record most favorably to Giordano, Giordano's conduct was a "private action" as opposed to a "board action." He specifically noted that a primary consideration "[wa]s whether [Giordano] acted with the formal support or authorization of the [B]oard" and that there was "some dispute [in the present matter] as to whether

---

[3] The SEC transferred Giordano's matter along with the remaining claims against Discenza.

a [B]oard president can request legal services from the [B]oard's attorney without the prior formal consent or authorization of the [B]oard or the other two individuals authorized by the district to request such services." The ALJ found that regardless of Giordano's authority to engage counsel, he "use[d] . . . school resources without the consent of the Board." Further, the ALJ found it undisputed that Giordano and Discenza were "political rivals" that had a "substantial negative prior history and continuing mutual disdain." The ALJ also found it relevant that Giordano: "fail[ed] to seek formal approval of either the request or the later use of the research at any time beyond seeking ratification of the charges in the November legal bill"; and "would not have had access to such resources but for his position on the Board." He determined Giordano's violations warranted the penalty of reprimand based on "the totality of the circumstances."[4]

The ALJ then closed the record in Giordano's matter on March 15, and on April 27, the ALJ issued a separate initial decision "incorporating the findings

---

[4] The summary decision had resolved all claims against Giordano, but claims against Discenza were subject to an evidentiary hearing. Accordingly, the ALJ severed Discenza's matter and returned Giordano's matter to the SEC. On March 6, the SEC moved for the ALJ to clarify whether the ALJ's summary decision fully resolved Giordano's matter and constituted the complete initial decision for the SEC's review.

6

of fact, conclusions of law[,] and recommendations of penalty pertaining to . . . Giordano as enunciated in the [s]ummary [d]ecision." Giordano filed exceptions to the ALJ's decision in accordance with N.J.A.C. 1:1-18.4. In July, the SEC issued its decision after considering Giordano's submissions, including certifications from Board members Linda Downing, Frank Palino, Harold Peters, and Nicholas Mirandi. These Board members certified to each having discussions with Giordano regarding Discenza's unethical conduct prior to Giordano's request for Supsie to "research the matter."[5]

The SEC adopted the ALJ's initial decision's findings of fact and legal conclusions regarding the three violations after "consider[ing] the full record," but it modified the recommended penalty from reprimand to censure. The SEC found a penalty modification was warranted because Giordano had been a Board member for six years, had "years of ethics training," and did not "wait[] to discuss [the concerns] with the Superintendent, Board Secretary, and/or whole Board." It also found the timing of Giordano's violations "noteworthy," because

---

[5] The SEC's decision included that "the certifications . . . attached to [Giordano's] exceptions [we]re not part of the record," as they were submitted after the record closed, but nonetheless found that the certifications did "not change that [Giordano] made the request for personal reasons." See N.J.A.C. 1:1-18.4(c) ("Evidence not presented at the hearing shall not be submitted as part of an exception, nor shall it be incorporated or referred to within exceptions.").

he contacted the Board's attorney "the very next day" after losing his election. Further, the SEC considered it relevant that Discenza campaigned against Giordano.

Giordano appealed the SEC's decision to the Commissioner. On May 15, 2024, the Commissioner denied Giordano's appeal. The Commissioner found "the SEC's decision that [Giordano] violated the [SEA wa]s supported by sufficient, credible evidence, and that [Giordano] failed to establish that the decision [wa]s arbitrary, capricious, or contrary to law" pursuant to N.J.A.C. 6A:4-4.1(a). In determining the evidence supported that Giordano violated the SEA, the Commissioner found: Discenza and Giordano "had a historically acrimonious relationship"; Giordano "instructed the Board attorney to investigate Discenza" only "[o]ne day" after he "lost the election"; and Supsie's firm's "legal bill had fifteen entries marked 'Member Conduct,' for which the Board attorney billed 33.9 hours of research, totaling $5,085."

The Commissioner was unpersuaded by Giordano's argument that as the Board president, the "District Policy" permitted him to seek legal research against another Board member's conduct. The Commissioner found sufficient evidence demonstrated Giordano's actions were for his advantage and personal gain, reasoning:

[T]here were other options available to [Giordano]. For example, [Giordano] could have asked the Board to vote on the research request before contacting the Board attorney. Alternatively, [Giordano] could have requested an advisory opinion from the SEC, pursuant to N.J.S.A. [18A:]12-31. This free option could have potentially saved the district $5,085, but it may not have achieved results prior to the end of [Giordano's] term. Another option would have been for [Giordano] to file an ethics complaint directly against Discenza, as she did to him, without the use of the Board attorney research and the unnecessary expense to the Board. Instead of availing himself of one of these options, [Giordano] took action that created the appearance to the public that he was using his position for personal gain.

Finally, the Commissioner found the SEC appropriately assessed Giordano the penalty of censure.

On appeal, Giordano contends reversal is warranted because: his decision to engage the Board's attorney was legitimate and within his authority; the SEC's decision was arbitrary, capricious, and unreasonable because disputed issues of material fact existed based on inferences in his favor; the Commissioner's decision was arbitrary, capricious, and unreasonable because the record does not support that he violated N.J.S.A. 18A:12-24(b), -24.1(e), and (f); and the SEC's penalty that the Commissioner upheld was arbitrary, capricious, and unreasonable.

A-3090-23

II.

"Judicial review of agency determinations is limited."  Bd. of Educ. of Kinnelon v. D'Amico, 477 N.J. Super. 184, 195 (App. Div. 2023) (quoting Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)).  "[A]n agency's findings of fact 'are considered binding on appeal when supported by adequate, substantial and credible evidence.'"  Donnerstag v. Borawski, 481 N.J. Super. 311, 322 (App. Div. 2025) (quoting Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004)).  "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Bd. of Educ. of Kinnelon, 477 N.J. Super. at 195 (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)).  "Arbitrary and capricious action means that an agency engaged in 'willful and unreasoning action, without consideration and in disregard of the circumstances.'"  Donnerstag, 481 N.J. Super. at 323 (quoting Northgate Condo. Ass'n v. Borough of Hillsdale Plan. Bd., 214 N.J. 120, 145 (2013)).

"[C]ourts afford an agency 'great deference' in reviewing [the agency's] 'interpretation of statutes within its scope of authority.'"  Bd. of Educ. of Kinnelon, 477 N.J. Super. at 196 (second alteration in original) (quoting N.J.

10

Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012)). "Such deference is required because 'agencies have the specialized expertise necessary to enact regulations dealing with technical matters . . . .'" In re Centex Homes, LLC, 411 N.J. Super. 244, 251 (App. Div. 2009) (quoting N.J. State League of Municipalities v. Dep't of Cmty. Affs., 158 N.J. 211, 222 (1999)). "Nonetheless, 'when an agency's decision is based on the "agency's interpretation of a statute or its determination of a strictly legal issue," we are not bound by the agency's interpretation.'" In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (quoting Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014)). We review statutory interpretation de novo. Ibid.

To effectuate the Legislature's intent when interpreting a statute, a court must first examine the plain language and ascribe to its words their ordinary meaning. Conforti v. County of Ocean, 255 N.J. 142, 163 (2023). "Where statutory language is clear, courts should give it effect unless it is evident that the Legislature did not intend such meaning." Rosetti v. Ramapo-Indian Hills Reg'l High Sch. Bd. of Educ., 481 N.J. Super. 1, 7 (App. Div. 2025) (quoting Bubis v. Kassin, 184 N.J. 612, 626 (2005)). We "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." W.S. v. Hildreth,

252 N.J. 506, 519 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

In enacting the SEA, "the Legislature declared its intention 'to ensure and preserve public confidence' in local school board members . . . by providing local board members with advance guidance on ethical conduct so that such members might conduct their personal affairs appropriately and within the bounds ethically expected." Bd. of Educ. of Kinnelon, 477 N.J. Super. at 196-97 (quoting Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 16 (2008)). The Legislature has also declared that public confidence in school members is preserved through "specific standards to guide their conduct." N.J.S.A. 18A:12-22(b).

"N.J.S.A. 18A:12-24(a) to [](g) list[s] seven specific prohibitions applicable to all school officials, including members of boards of education." Bd. of Educ. of Kinnelon, 477 N.J. Super. at 197. N.J.S.A. 18A:12-24(b) states, "No school official shall use or attempt to use his official position to secure unwarranted privileges, advantages or employment for himself, members of his immediate family or others." The Code provides in pertinent part that they will:

> . . . recognize that authority rests with the board of education and will make no personal promises nor take any private action that may compromise the board.

. . . refuse to surrender my independent judgment to special interest or partisan political groups or to use the schools for personal gain or for the gain of friends.

[N.J.S.A. 18A:12-24.1(e), (f).]

Our Supreme Court has held that, under the common law, "[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body." Grabowsky v. Township of Montclair, 221 N.J. 536, 551 (2015) (alteration in original) (quoting Wyzykowski v. Rizas, 132 N.J. 509, 523 (1993)). A determination of "[w]hether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case." Paruszewski v. Township of Elsinboro, 154 N.J. 45, 58 (1998) (quoting Wyzykowski, 132 N.J. at 523). "The question is whether there is a potential for conflict, not whether the conflicting interest actually influenced the action." Haggerty v. Red Bank Borough Zoning Bd. of Adjustment, 385 N.J. Super. 501, 513 (App. Div. 2006).

III.

We first address Giordano's contention that, because he was authorized as the Board president to engage counsel to conduct legal work, his directing

13

Supsie to conduct legal research on Board member Discenza was a legitimate "board action."  He posits that a "conundrum" exists, which he alleges the SEC and ALJ did not resolve, regarding his authority to request legal work and restrictions as to the nature of services that may be performed.  He specifically relies on the District Policy as "unconditionally authoriz[ing]" him to "request legal services from the Board's attorney."  As we discern Giordano's ethical obligation as a Board member is clear, and the Commissioner's final decision is amply supported by the record, we are unpersuaded.

Giordano seeks to shield his actions as Board president from the application of the SEA simply because he had the authority to engage counsel.  Giordano was subject to the same SEA requirements as every other Board member.  Being granted more authority to represent the Board did not negate his ethical obligations.  The Commissioner correctly found no merit to Giordano's argument that he permissively wielded his Board president authority.

Additionally, we discern no merit in Giordano's argument that the Commissioner's decision was arbitrary capricious, and unreasonable because material issues of fact existed.  His contention that the four Board members' certifications, attesting that separate discussions occurred with Giordano regarding Discenza's conduct, demonstrates that he did not take "private actions"

14

lacks merit.[6] It is unrefuted that Giordano failed to bring his concerns to the Board for a vote, the superintendent, or the business administrator prior to requesting the legal research. His submission of Board members' certifications, over three years later, that they "separately [had] different telephone call[s]" does not negate his private action of unilaterally instructing Supsie in violation of N.J.S.A. 12:24.1(e).

Further, the record demonstrates that the Commissioner committed no error in finding it undisputed that Giordano directed the Board's attorney to conduct research on Discenza only one day after he lost reelection to the Board in November 2019, and Discenza had directly campaigned against him. Further, Giordano's actions were weighed against the backdrop of Giordano's understanding that he alone was authorizing the expense of legal work that taxpayers would be obligated to pay. As Board president, he independently used

---

[6] We note that Giordano also moved for summary decision before the ALJ. "The filing of a cross-motion for summary judgment generally limits the ability of the losing party to argue that an issue raises questions of fact, because the act of filing the cross-motion represents to the court the ripeness of the party's right to prevail as a matter of law." Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 177 (App. Div. 2008); see also Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995) (providing a motion for summary decision is "substantially the same" as a motion for summary judgment under Rule 4:46-2). Nevertheless, we have considered his contentions on the merits and are unpersuaded.

his privilege as a designated authority under the District Policy to engage counsel against an adverse Board member. While the District Policy afforded the Board president authority to request legal services, that authority was not without restrictions under the SEA. Giordano offers no support for his contention that as the Board president, he had unfettered and unrestricted authority to request any legal work he deemed appropriate. Relevantly, as the Commissioner noted, the Board had to vote to approve payment of Supsie's legal work of over $5,000.

Finally, we discern the Commissioner correctly determined that Giordano's undisputed actions constituted SEA violations. The record supports that Giordano, as a Board member, was a "school official" under N.J.S.A. 18A:12-24(b) and prohibited from "us[ing] his official position to secure unwarranted privileges[ or] advantages . . . for himself, . . . or others." Giordano was also bound under the Code not to "take any private action that may compromise the board." N.J.S.A. 18A:12-24.1(e). Sufficient unrefuted evidence in the record supports that Giordano "took action[s] beyond the scope of . . . [his] duties such that, by [their] nature, [the actions] had the potential to compromise the district board of education." N.J.A.C. 6A:28-6.4(a)(5). Further, we also concur with the Commissioner that the evidence supports that

Giordano "surrender[ed] [his] independent judgment to special interest or partisan political groups or to use the schools for personal gain or for the gain of friends." N.J.S.A. 18A:12-24.1(f); see also N.J.A.C. 6A:28-6.4(a)(6) (providing that a Board member's violation may be established by demonstrating evidence of an action taken "on behalf of, . . . a special interest group or persons organized and voluntarily united in opinion and who adhere to a particular political party or cause; or . . . used the schools in order to acquire some benefit[7] for the respondent(s), . . . or a friend"). The Commissioner's FAD finding that Giordano's actions violated N.J.S.A. 18A:12-24(b), -24.1(e), and (f) by a preponderance of the evidence is amply supported because Giordano: used being Board president to his unwarranted advantage; compromised the Board through his opportunistic unilateral actions of requesting legal work against a Board member, which fell outside the scope of his authorization; and was motivated by personal gain and special interests. See N.J.S.A. 18A:12-29(b) (providing "the burden of proof shall be on the accusing party to establish factually a violation of the [C]ode"); see also N.J.A.C. 6A:28-6.4(a) (stating the same).

---

7   Under N.J.A.C. 6A:28-1.2, "benefit" is defined as "direct or indirect advantage, profit, privilege, or gain, whether financial, personal, or otherwise."

Regarding Giordano's arguments that the Commissioner's decision to affirm the SEC's penalty of censure was arbitrary, capricious, or unreasonable, we conclude they lack merit. Affording deference as we must, we discern that the penalty was warranted based on the totality of facts supporting the violations. See N.J.S.A. 18A:12-29(c) (stating "the [SEC] shall . . . recommend to the [C]ommissioner the reprimand, censure, suspension, or removal of [a board member] . . . found to have violated [the SEA] . . . or the [Code] . . . [and] [t]he [C]ommissioner shall then act on the [SEC's] recommendation"); see also N.J.A.C. 6A:3-9.1(a) (providing "the Commissioner shall review penalty recommendations of the [SEC]," which "shall be limited to the appropriateness of the penalty recommended by the [SEC] in light of its findings of fact and determination of violation"). Giordano's actions were a "blatant use of board resources for his own motivations" and "w[ere] not de minimis." Therefore, the record sufficiently supports the Commissioner's sanction.

To the extent that we have not addressed Giordano's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18                                                                      A-3090-23