**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0206-15T1

BERGEN RIDGE HOMEOWNERS
ASSOCIATION, INC.,

    Plaintiff-Appellant,

v.

TOWNSHIP OF NORTH BERGEN
PLANNING BOARD, RIVERVIEW
DEVELOPMENT, LLC and TOWNSHIP
OF NORTH BERGEN,

    Defendants-Respondents.

_____

Argued March 1, 2018 — Decided August 30, 2018

Before Judges Simonelli, Rothstadt and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1791-14.

Ira E. Weiner argued the cause for appellant (Beattie Padovano, LLC, attorneys; Ira E. Weiner and John J. Lamb, of counsel and on the brief; Daniel L. Steinhagen, on the brief).

John R. Dineen argued the cause for respondent North Bergen Planning Board (Netchert, Dineen & Hillmann, attorneys; John R. Dineen, on the brief).

Jeffrey A. Zenn argued the cause for respondent Riverview Development, LLC (Cullen & Dykman LLP, attorneys; Jeffrey A. Zenn, on the brief).

Cindy Nan Vogelman argued the cause for respondent Township of North Bergen (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Cindy Nan Vogelman, of counsel and on the brief; Qing H. Guo, on the brief).

PER CURIAM

In this prerogative writs matter, plaintiff Bergen Ridge Homeowners Association, Inc. appeals from the July 27, 2015 Law Division order for judgment, which affirmed the decision of defendant Township of North Bergen Planning Board (Board) to grant the application of defendant Riverview Development, LLC (Riverview) to build a multi-family apartment building with underground parking on a site bordering the Hudson River. For the following reasons, we affirm.

I.

In May 2005, Riverview acquired Block 438, Lots 4A and 4B, and part of Lot 1 in the township (the property), a vacant lot at 8200 River Road bordering the Hudson River.[1] Because of the

---

[1] Plaintiff does not challenge Riverview's title to Lot 1.

shoreline, the 26.37-acre site was irregularly shaped and contained 19.7 under-water acres and only 6.07 uplands.[2] The property changed depths at multiple points; for example, its widest part ranged from ninety to 420 feet with a midpoint depth of 260 feet. It was located in the P-1 (river front) zone. When Riverview purchased the property, it contracted with defendant Township of North Bergen (Township) to provide fifty parking spaces for use by nearby residents at a monthly rental fee.

In 2006, Riverview filed a site plan application[3] to construct a single building with three nine-story towers containing 233[4] residential units. The project included a three-story structure less than fifty feet in height, with two floors of enclosed parking with 537 spaces built underneath a common area with lobbies, a fitness room, a lounge, and offices. The three residential towers would be built on top of this three-story structure.

The project also included a .6 acre park area with a sixteen-foot wide public walkway bordering the river. The total building footprint was 2.83 acres. The project had three driveways

---

[2] The property also contained land designated to become part of a county roadway.

[3] The Township rejected an earlier application because Riverview failed to apply for a building coverage variance.

[4] The original application requested 256 units, but twenty-three townhouses were ultimately removed from the plan.

A-0206-15T1

including one bordering an undeveloped tract in the neighboring Borough of Edgewater.

Township of North Bergen Zoning Ordinance (NBZO) 11.2(d)(1) required residential and office buildings along the waterfront to have their longest dimension in an east-west orientation, or perpendicular to the water, in order to maximize views of the river and the New York skyline. The project's three-story structure was oriented with its longest dimension in a north-south direction, in violation of the ordinance. However, the residential towers built on top of the three-story structure were oriented with their longest dimension in an east-west direction, in compliance with the ordinance.

To further protect views of the river, NBZO 11.4 required "view corridors" of at least fifty feet in width positioned at the ends of streets perpendicular to the river. Within the view corridors, no building could exceed five stories or fifty feet in height. Riverview's project included view corridors that were 250 feet wide.

NBZO 11.3(a)(3) and Table 3.10.a, supplementing NBZO 3.10(a), provided that in the P-1 zone, the maximum permitted building coverage was 35% of the lot, excluding lands under water. Building coverage is the percentage of the area of a lot covered by a building or any part of a building. Riverview's proposed building

4                                                        A-0206-15T1

coverage was 46.6%, including the parking garage. Table 3.10.a permitted seventy-five dwelling units per acre but Riverview proposed only forty-three per acre. Table 3.10.a required a ten-foot landscaped buffer at the side edge of the property. At the northern property line, the project included only a three-foot landscaped buffer.[5]

NBZO 7.1(b)(4)(d) provides that aggregate lighting in parking areas should be no more than two "foot-candles"[6] and should not shine on adjacent properties. At the property line, lighting intensity at ground level should be less than .1 foot-candle.

NBZO 10.4(a) required the Board to make timely decisions on site plan applications. NBZO 10 required the Board to make findings about compliance with Township ordinances and the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, the adequacy of open space, provisions for public services, vehicular and pedestrian traffic, light and air, recreation and physical enjoyment, and the development's impact on the area.

In the P-1 zone, the Township permitted planned unit residential developments (PURD) defined as:

> [a]n area . . . with a minimum contiguous
> acreage of five (5) acres, to be developed

---

[5] Ultimately, Riverview's landscaped buffer on the northern border was omitted entirely.

[6] Defined as a "unit of illuminance or light intensity."

> according to a plan as a single entity
> containing one or more residential clusters,
> which may include appropriate commercial or
> public or quasi-public uses, all primarily for
> the benefit of the residential development
> . . . .

Off-street parking was a permitted accessory use in the P-1 zone if it served residents of the planned development.

In June 2006, the Board held its first hearing. On October 23, 2006, the New Jersey Department of Environmental Protection (DEP) granted Riverview a permit to engage in waterfront development but later, apparently, withdrew it. See In Re Riverview Dev., LLC, Waterfront Dev. Permit No. 0908-05-0004.3 WFD 060001, 411 N.J. Super. 409, 418-23 (App. Div. 2010) (discussing the DEP permit).

On December 20, 2006, the Township adopted Ordinance 1085-06 (O-1085-06), which provided that an applicant for site plan approval could request a "special meeting" devoted exclusively to its application, to be scheduled at the Board's discretion. The fee for a special meeting was $2000. Riverview requested special meetings, and the Board agreed because extensive testimony was required.

On July 9, 2007, plaintiff's counsel discovered the Township was using Riverview's escrow account to pay Board members for attending special meetings. On July 17 and 24, 2007, plaintiff's

6

counsel protested the payments, asserting they created a conflict of interest and an appearance of impropriety.

On September 12, 2007, the Township adopted Ordinance 1106-07 (O-1106-07), which increased special meeting attendance fees for Board members from $100 to $150.  Payment would be made from the applicant's escrow fund using the $2000 special meeting fee. Board members were also entitled to payment if the applicant gave a less than seventy-two-hours cancellation notice of a special meeting.  As of September 2007, Board members were paid for attending twelve special meetings in this matter, including three that were cancelled.

On February 14, 2008, plaintiff's counsel argued the Board lacked jurisdiction to grant a variance for the parking spaces designated for the Township because Township residents who did not reside at Riverview would be charged a fee to use the spaces, but parking garages were not permitted in the P-1 zone.  Plaintiff's counsel asserted that a use variance was necessary, which could only be granted by the Zoning Board of Adjustment.

At the hearings on Riverview's application, Adam Remick, Riverview's engineer, testified the project complied with most Township requirements, including lot dimensions, impervious area coverage, side yard setback, density, building height, landscaped areas, open space and parking, and the project's landscaping and

open space exceeded Township requirements. Remick opined the project only required variances for lighting and building coverage.

At a special meeting, Remick testified that while the lighting would generally comply with the .1-foot-candle requirement at the property line, for safety reasons lighting would be increased to 2.2 foot-candles at three driveway locations, and cutoff shields would be provided to limit light spillage onto adjacent property.

The Board's engineer, Derek McGrath, agreed with Remick that light spillage at those locations would be de minimis. However, he opined that Riverview should rectify future lighting problems that might arise when the neighboring property in Edgewater was developed.

Riverview's professional planner, Daniel McSweeney, testified that each tower would have its widest portion oriented east-west in compliance with the Township ordinance, but the parking garage would not be oriented east-west. However, he did not believe a building orientation variance (BOV) was necessary because within the view corridor area, Riverview was meeting the intent and spirit of the ordinance. He opined that a hardship variance was appropriate because of the irregularly shaped property and the fact that nineteen acres were underwater. He also opined the project met the negative criteria and all Township requirements

8

for impervious coverage and open space, and only a variance for building coverage was necessary.

McSweeney also discussed the landscaped buffer on the northern edge of the property, which was three-feet wide instead of the ten-feet required by Table 3.10.a.  The full buffer was not possible because space was needed for daily garbage removal in that area.  Also, the landscaped buffer was not crucial because the project exceeded the Township's open air requirements.

A professional engineer, Robert Foley, agreed with McSweeney that there was no room for the ten-foot landscaped buffer on the northern border of the property; however, in that location, the project would instead include an eight-foot wide sidewalk leading to the river walkway.  The landscaped buffer at the northern border was ultimately eliminated completely from the project and replaced with a wide sidewalk leading to the river.

A real estate appraiser, Donald Helmstter, prepared a report that calculated the value of plaintiff's townhouses before and after the development.  Helmstetter testified that before the development, plaintiff's townhouses, with unobstructed views, were valued at approximately $825,000 for a two-family unit and $1 million for a three-family unit.  After the development, with obstructed views, he calculated the price of a two-family unit at only $625,000 and a three-family unit at $725,000, an average loss

of $200,000 per unit.

Plaintiff's planner, Peter Steck, clarified that preserving views of the Hudson River and the New York skyline was a goal of the Township's master plan, the 2003 master plan reexamination report, and Township zoning ordinances. Steck cited the master plan's statement that the waterfront is a "significant and unique resource" which should be developed in a manner which "benefits the entire community" and efforts should be made "to ensure visual and physical access" to it.

An architect, Robert Siegel, testified that the project was designed with any eye toward protecting views of the river. In addition, cars and garbage removal would not be visible because of where the parking garage was located.

Traffic and parking experts included: Michael Maris, Nicholas Verderese, Ronald Reinersten, Brian Collins, and Denis Molner. Other experts included Adrian Figueroa, an architect, Mike Cotreau, a view corridor expert, Stephen Borghi, a landscape architect, John Thonet, a civil engineer, and Gordon Hamm, a valet parking expert.

In its March 4, 2014 resolution, the Board made the following findings: the project complied with Township ordinances concerning the view corridor; the positives outweighed any detriment to the Township's master plan; the building orientation ordinance was

10

meant to protect the view of the New York skyline; an eye-level view of the river would be available from the river walkway; a BOV was not necessary; if a BOV was necessary, it should be granted pursuant to N.J.S.A. 40:55D-70(c)1 and 2; a lighting variance was appropriate under N.J.S.A. 40:55D-70(c)2; variances were appropriate for the number and size of parking spaces; lighting intensity of 2.2 foot-candles was necessary for security reasons; Riverview would cooperate with Township's professionals to reduce light spillover to the neighboring property; the purpose of the P-1 zone was "to enhance the waterfront of the Township and to ensure visual and physical access to [it];" the MLUL permits granting of variances when specific conditions have been met; the project represented no substantial detriment to the master plan; the towers would affect the views of the New York skyline even though they were oriented in the proper direction and in compliance with Township ordinances; the ten-foot landscaped buffer at the northern border was not necessary because instead, a better planning alternative was an eight-foot sidewalk accessing the riverfront.

In a lengthy document of more than 120 pages, the Board summarized all the evidence it relied on, including expert opinions, the examination and cross-examination of witnesses, and the documents presented.

By 2014, Riverview paid a total of $35,750 for Board members' attendance at thirty-nine special meetings. In count fourteen of its amended complaint, plaintiff alleged that payment of special meeting fees constituted a conflict of interest and/or appearance of impropriety and a violation of the MLUL. In count fifteen, plaintiff alleged, in part, that O-1106-07 is unconstitutional as applied based on the required payment for attendance at special meetings.

The trial judge granted summary judgment to defendants and dismissed counts fourteen and fifteen. On appeal, plaintiff contends the judge erred in granting summary judgment because the special meeting payments tainted the proceedings with the appearance of impropriety and a conflict of interest, and O-1106-07 was ultra vires and illegal.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as the trial judge did, "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co., 142 N.J.

520, 536 (1995)).   Summary judgment must be granted "'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"   Templo Fuente De Vida Corp. v. National Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'"   Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion."   Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations omitted).

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted).   We review issues of law de novo and accord no deference to the trial judge's legal conclusions.   Nicholas v. Mynster, 213 N.J. 463, 478 (2013).   "[F]or mixed questions of law and fact, [an appellate court] give[s] deference . . . to the supported factual findings

of the trial court, but review[s] de novo the lower court's application of any legal rules to such factual findings." State v. Pierre, 223 N.J. 560, 576-77 (2015) (citations omitted). Applying the above standards, we discern no reason to reverse the grant of summary judgment.

The judge found that the payment of special meeting fees did not create a conflict of interest or an appearance of impropriety, and O-1106-07 was consistent with N.J.S.A. 40:55D-8, which provides, in pertinent part:

> a. Every municipal agency shall adopt and may amend reasonable rules and regulations, . . . for the administration of its functions, powers and duties . . . .
>
> b. Fees to be charged (1) an applicant for review of an application for development by a municipal agency, and (2) an applicant pursuant to section 8 of this act shall be reasonable and shall be established by ordinance.

The judge found no nexus between paying of special meeting fees and the Board's grant of the application.

The judge cited to Galaxy Towers Condominium Ass'n v. Township of North Bergen Planning Board, No. L-2952-13, where he addressed the identical issue. The judge found the payment of special meeting fees to Board members was acceptable according to N.J.S.A. 40:55D-8(b) and necessary to address the backlog of applications, given that the Board only met once per month. We affirmed, quoting

the judge as follows:

> The special meetings in this case were necessary to elicit additional testimony from witnesses following remand . . . . Indeed, the complexity of the instant application should not be overlooked. The stipend is necessary to encourage attendance and to hear applications that may otherwise be impracticable to consider with the regularly scheduled Board meetings alone.
>
> [Galaxy Towers Condo. Ass'n v. Twp. of N. Bergen Planning Bd., Nos. A-3583-13, A-0184-14, A-0519-14 (App. Div. Aug. 8, 2016) (slip op. at 27).]

Accordingly, the payment of special meeting fees was proper in this case and did not create a conflict of interest or appearance of impropriety.

Nevertheless, plaintiff contends that O-1106-07, which authorized the payment, was ultra vires and illegal because the MLUL does not authorize payments to Board members for attending special meetings. Plaintiff argues that N.J.S.A. 40:55D-53.2 specifically prohibits payments to Board members because the statute provides that no municipal expense may be charged to a developer's escrow account except what is paid to professionals. Plaintiff relies on Cerebral Palsy Center, Bergen County, Inc. v. Mayor & Counsel, 374 N.J. Super. 437 (App. Div. 2005) to argue that N.J.S.A. 40:55D-53.2 only permitted payment of fees to the Board's professional consultants, not to the Board members for

attendance at special meetings.

N.J.S.A. 40:55D-53.2 provides in pertinent part:

> a. The chief financial officer of a municipality shall make all of the <u>payments to professionals</u> for services rendered to the municipality or approving authority for review of applications for development, review and preparation of documents, inspection of improvements or other purposes . . . . Such fees or charges shall be based upon a schedule established by resolution. <u>The application review and inspection charges shall be limited only to professional charges</u> for review of applications, review and preparation of documents and inspections of developments under construction and review by outside consultants when an application is of a nature beyond the scope of the expertise of the professionals normally utilized by the municipality. . . . <u>The municipality or approving authority shall not bill the applicant, or charge any escrow account or deposit authorized under subsection b. of this section, for any municipal clerical or administrative functions, overhead expenses, meeting room charges, or any other municipal costs and expenses except as provided for in this section</u>, nor shall a municipal professional add any such charges to his bill.
>
> [(Emphasis added).]

The purpose of N.J.S.A. 40:55D-53.2 is to limit and control the costs of applying for land-use approvals. <u>Cerebral Palsy Ctr.</u>, 374 N.J. Super. at 447.

Plaintiff's argument is partially correct because N.J.S.A. 40:55D-53.2 addresses fees for the Board's professional consultants. However, plaintiff is incorrect inasmuch as the

statute does not address whether Board members may be paid for attendance at special meetings. In fact, here, the judge correctly stated that a fair reading of the language of N.J.S.A. 40:55D-53.2 is that its purpose is to control professional fees, rather than define the entire universe of charges imposed on an applicant for special meetings.

However, because N.J.S.A. 40:55D-53.2 only addresses professional fees and does not address payments to Board members for attending special meetings, it does not govern whether the special meeting fees were permissible in this case. In addition, Cerebral Palsy Center is easily distinguished because there, the municipality required applicants for site plan approval to pay for the services of a public advocate who would "review and comment upon" the application. 374 N.J. Super. at 446. Here, applicants could voluntarily undertake the expense of special meetings but were not required to do so. Further, the payment in Cerebral Palsy Center was for the "professional" services of a public advocate pursuant to N.J.S.A. 40:55D-53.2. There is no professional service here, but rather payments to Board members for attending special meetings.

Plaintiff argues that N.J.S.A. 40:55D-8(b) permits filing fees to be used only for administrative costs and not for compensation of Board members. However, N.J.S.A. 40:55D-8(b)

17

provides that fees charged to an applicant must be reasonable and established by ordinance. The statute does not limit how a municipality may use the fees, or exclude payments to Board members for attending special meetings. In fact, given that the Board meets only once per month, if Board members were unwilling to attend special meetings, it would be impossible to timely decide complex applications that require extensive testimony. Encouraging Board members to attend special meetings to ensure timely decisions is in accord with the municipality's responsibility under the MLUL and NBZO 10.4(a), which requires timely decisions on applications. Notably, even with the payment of attendance fees, it still took nearly seven years to resolve Riverview's application.

Citing <u>Nunziato v. Planning Board of Edgewater</u>, 225 N.J. Super. 124, 132-34 (App. Div. 1988), plaintiff argues that the payments tainted the proceedings. There, the planning board approved a site plan in exchange for the developer's promise to contribute $203,000 to affordable housing in the municipality. <u>Id.</u> at 132-34. We held the proceedings were irremediably tainted because the developer and board bargained for the $203,000, a material factor in granting site plan approval. <u>Id.</u> at 133. We determined that such bargaining, was "inimical" to the goals of land use regulation. <u>Id.</u> at 134.

Here, unlike in Nunziato, there was no bargaining, and Board members were not paid to grant the approval. To the contrary, the payments were solely made to encourage their attendance at special meetings, with no requirement that the Board members who received payments should vote a particular way.

Plaintiff argues the fees were improper because N.J.S.A. 40A:9-22.5 prohibits officials from acting in a matter in which they have financial involvement that might impair their objectivity. N.J.S.A. 40A:9-22.5(d) provides:

> No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment[.]

We disagree with plaintiff that payment of a $150 fee for attending a special meeting should be considered direct or indirect financial or personal involvement that might reasonably be expected to impair a Board member's objectivity or independence of judgment. Riverview paid $35,750 for Board members' attendance at special meetings over the course of seven years. This amounts to less than $5000 per year divided among several Board members. These relatively minor payments were not sufficient to impair their judgment.

Citing <u>Aldom v. Roseland</u>, 42 N.J. Super. 495, 502 (App. Div. 1956), plaintiff argues that special meetings were not necessary and created an appearance of impropriety. There, a zoning ordinance was invalidated because a board member voted on matters that impacted his employer who owned significant land in the community. <u>Id.</u> at 502. We stated that even when the financial interest of a board member is small or "indirect" the board must avoid the appearance of impropriety. <u>Ibid.</u> Here, no Board member, employer or family member of a Board member had a financial stake in Riverview's application.

Citing <u>Shapiro v. Mertz</u>, 368 N.J. Super. 46 (App. Div. 2004), plaintiff argues the payments created a conflict of interest. There, a town council member voted to appoint her spouse to the planning board. <u>Id.</u> at 51-53. We held there was a clear conflict of interest when a person votes to appoint a family member to a position in a government agency. <u>Id.</u> at 51-54. Here, no board member's family member received any significant benefit because of the payment of special meeting fees.

Plaintiff also cites to <u>Randolph v. City of Brigantine Planning Board</u>, 405 N.J. Super. 215, 220 (App. Div. 2009), where a planning board chairperson who resided with her boyfriend voted to hire her boyfriend's employee. The chairwoman stood to gain financially from the hiring of her boyfriend's employee. <u>Id.</u> at

231-32. Here, any financial gain to Board members was minimal and they did not have to vote a particular way to receive payments.

Plaintiff argues the special meeting fees were invalid because they were paid prior to the adoption of O-1106-07. The trial judge determined the payments made prior to adoption of the ordinance were technical errors subject to ratification pursuant to <u>Summer Cottagers' Ass'n of Cape May v. City of Cape May</u>, 19 N.J. 493, 504-05 (1955) (holding that where an act is "irregular exercise of a basic power under the legislative grant," ratification is permissible, so long as "relaxation of the conditions laid down in the grant of the power" does not "defeat the public policy intended to be served").

The Township passed O-1106-07 shortly after it began paying special meeting fees to Board members. The relaxation of MLUL conditions, i.e., that the payments should be made pursuant to an ordinance, did not defeat any public policy intended to be served. We agree with the judge that the payments prior to adoption of O-1106-07 were technical errors that could be ratified. For all of these reasons, we affirm the grant of summary judgment to defendants.

### III.

Plaintiff contends the judge erred by affirming the Board's grant of the BOV. We disagree.

Riverview maintained it did not need a BOV because the towers were oriented correctly although the parking garage was not. The Board agreed a BOV was not required because the dominant portion of the project was the residential towers, which were oriented correctly in an east-west direction. The Board determined the ordinance only required residential buildings to be oriented in the correct direction, but not the parking garage.

In addition, the Board found the building orientation and view corridor ordinances should be read in conjunction and the improper orientation of the parking garage did not affect the view and was acceptable because it was less than fifty-feet high. The Board noted the zoning ordinances provide that structures under five stories or fifty-feet high do not interfere with the view.

The Board also found, however, that if a BOV were necessary it should be granted under N.J.S.A. 40:55D-70(c)(1) because of the property's unique shape and topography, and under N.J.S.A. 40:55D-70(c)(2) because the parking garage was more visually appealing than surface blacktop.

The judge determined the Board erred in interpreting the ordinance because the orientation requirement applied to the whole building and not a portion of it; thus, because the parking garage was oriented in the wrong direction, Riverview required a BOV. Nevertheless, the judge affirmed the Board's determination that

22

if a BOV was necessary, it should be granted pursuant to N.J.S.A. 40:55D-70(c)(1) and (c)(2) because the evidence supported this conclusion.

The decision of a municipal board is entitled to substantial deference. Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (citing Kramer v. Bd. of Adustment, 45 N.J. 268, 296 (1965)). The court may not substitute its judgment for that of the board. Burbridge v. Mine Hill Twp., 117 N.J. 376, 385 (1990). Courts reviewing a municipal board action on zoning applications are limited to determining whether the board's decision was arbitrary, unreasonable, or capricious. Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 198 (App. Div. 2001). Review of decisions of local land use agencies begins with the recognition that the board's decision is presumptively valid. Sica v. Bd. of Adjustment, 127 N.J. 152, 166-167 (1992). "[B]oards possess special knowledge of local conditions and must be accorded wide latitude in the exercise of their discretion." Ibid. (citing Kramer, 45 N.J. at 296-97).

The burden is on a challenger to show that the board's decision was incorrect. S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment, 373 N.J. Super. 603, 615-616 (App. Div. 2004) (citing N.Y. SMSA Ltd. P'ship v. Bd. of Adustment, 324 N.J. Super. 149, 163 (App. Div. 1999)). A determination predicated on unsupported

findings is the essence of arbitrariness and caprice. <u>Witt v. Borough of Maywood</u>, 328 N.J. Super. 432, 442 (Law Div. 1998), <u>aff'd</u>, 328 N.J. Super. 343 (App. Div. 2000). The same standard of review that governs the trial court applies to an appellate court. <u>Charlie Brown of Chatham, Inc. v. Bd. of Adjustment</u>, 202 N.J. Super. 312, 321 (App. Div. 1985).

The MLUL requires municipalities to develop lands in a manner which promotes the general welfare. <u>388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington</u>, 221 N.J. 318, 346 (2015). An application for a bulk variance often implicates several purposes of the MLUL, including: to encourage municipalities to develop land in a manner that promotes health, safety and welfare, to minimize threats to public safety, to provide adequate light, air and open space, to promote a desirable visual environment, and to establish appropriate population densities. <u>Ten Stary Dom P'ship v. Mauro</u>, 216 N.J. 16, 30-31 (2013).

A variance may be granted for "special reasons" so long as it will not cause "substantial detriment" to the public good and it will not "substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d). The statute requires proof of both positive and negative criteria. <u>Sica</u>, 127 N.J. at 156. "Under the positive criteria, the applicant must establish 'special reasons' for the grant of the variance."

*Ibid.* To satisfy the negative criteria, the applicant must establish that the variance "can be granted without substantial detriment to the public good" and that it will not "substantially impair the intent and the purpose of the zone plan and zoning ordinance." *Ibid.*

N.J.S.A. 40:55D-70(c)(1) provides:

> Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to . . . this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship[.]

N.J.S.A. 40:55D-70(c)(2) provides:

> where in an application or appeal relating to a specific piece of property the purposes of this act . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, grant a variance to allow departure from regulations pursuant to article 8 of this act; . . . .

The board must "take cognizance when bulk variances are required" especially when evidence has been presented of

"potential bulk restriction violations." O'Donnell v. Koch, 197 N.J. Super. 134, 143 (App. Div. 1984). For a N.J.S.A. 40:55D-70 (c)(2) variance, approval should be based on the purposes of the zoning ordinance and not on the advancement of the goals of the property owner. Ten Stary Dom P'ship, 216 N.J. at 30.

Plaintiff argues the Board's action was arbitrary and capricious because it granted the BOV in the absence of any evidential support. Plaintiff posits the Board should not have relied on N.J.S.A. 40:55D-70(c)(1) to grant the variance.

N.J.S.A. 40:55D-70(c)(1) permits granting a variance if there is a hardship caused by the property's exceptional narrowness, shallowness or shape or for exceptional topographic conditions or physical features uniquely affecting the property. The record amply supported the Board's finding that a hardship existed pursuant to N.J.S.A. 40:55D-70(c)(1) because the property was long, narrow, and mostly under water. The unusual shape and topography of the property was emphasized throughout the special meetings.

In addition, the Board correctly found that the building orientation ordinance was intended to protect public views, and the project complied with the view corridor ordinance and sufficiently protect public views. In fact, the only aspect of the building that was not oriented correctly was the parking garage

which would not affect public views. It is clear from the language of the ordinances that a building of less than five stories or fifty feet in height, such as the building here, was not considered an impediment to the views. Thus, we agree that the Board's grant of the BOV for the improperly oriented parking garage did not unreasonably obstruct the public views.

Plaintiff argues the sole reason for the hardship was because Riverview designed an oversized building, and Riverview would not need a variance had it designed a smaller building. However, more than nineteen of the site's twenty-six acres were under water. In order to maximize use of the unusually shaped parcel of land and its relatively small acreage that was above water, Riverview required a variance for only the parking garage. The towers complied with Township requirements for orientation, view corridor, and height, as well as front, side and back yard setback.

Further, as the Board noted, if the BOV was not granted, the parking garage would be moved to the exterior surface, which would be visually unappealing. Given the constraints of the oddly shaped and mostly submerged property, we are satisfied the evidence supported granting the BOV pursuant to N.J.S.A. 40:55D-70(c)(1).

Plaintiff also argues the court erred by permitting the Board to grant a BOV pursuant to N.J.S.A. 40:55D-70(c)(2) because the benefits of the project did not substantially outweigh the

27

detriments.  Plaintiff posits the site plan does not benefit the community, and N.J.S.A. 40:55D-70(c)(2) is only meant to be invoked when the granting of a variance would improve upon zoning rules, but here, the zoning ordinances were intended to preserve the view and the Riverview project destroyed it.

We disagree with plaintiff.  Riverview complied with Township ordinances that protected the view, and the record does not support plaintiff's assertion that granting the BOV destroyed the view.  As previously noted, the three-story structure that included the parking garage was less than fifty feet high and not tall enough to obstruct the view.  The only part of the project that was oriented in the wrong direction was the parking garage, which did not affect exterior views.

In addition, Riverview's view corridor was 250-feet wide, exceeding what the ordinance required.  Moreover, the evidence supported the Board's finding that above-ground parking would be less beneficial to the community because it would require visually unappealing black-top.  Accordingly, granting the BOV pursuant to N.J.S.A. 40:55D-70(c)(2) was appropriate.

Plaintiff argues that Riverview did not present an alternative plan, so it is impossible to weigh the positive and negative impacts.  However, the record supports the Board's finding that an alternative to the parking garage was surface parking,

which was less desirable because it entailed more blacktop and less landscaping. Thus, the Board correctly determined that outdoor parking would create a negative impact and the BOV should be granted pursuant to N.J.S.A. 40:55D-70(c)(2). Accordingly, the judge was correct to uphold the Board's determination that if a BOV was necessary, it should be granted pursuant to N.J.S.A. 40:55D-70(c)(1) and (c)(2).

## IV.

Plaintiff argues the Board lacked jurisdiction to approve the fifty parking spaces for use by nearby residents. The fifty parking spaces, known as "contract" spaces, were separately designated on the architectural plans and located inside the parking garage. The judge determined a use variance was not ripe for adjudication given that until the parking lot was constructed it was unclear how the Township intended to use the spaces.

We have held that:

> An incidental use is one that relates to a business, trade, profession or occupation in general and not specifically to the use which is peculiar to the applicant. . . .
>
> The use must be . . . commonly, habitually and by long practice . . . established as reasonably associated with the primary use.
>
> [Charlie Brown, 202 N.J. Super. at 324.]

Plaintiff first argues Riverview planned to use the fifty

spaces as a paid parking garage, which is not permitted in the P-1 zone, and thus, required a use variance pursuant to N.J.S.A. 40:55-70(d)(1), which may only be granted by the Zoning Board of Adjustment. In support, plaintiff cites Najduch v. Township of Independence Planning Board, 411 N.J. Super. 268, 279 (App. Div. 2009) (holding that planning board may only consider applications for permitted use).

Plaintiff also argues there was no evidence supporting the judge's conclusion that the Township, and not Riverview, had discretion to determine how to use the spaces. Plaintiff's sole evidence that Riverview intended to construct a paid parking garage is the 2005 contract of sale, which required Riverview to provide spaces for nearby residents at a monthly fee.

Riverview counters that despite the language in the 2005 contract, it does not intend to charge a fee for parking and the Township will have discretion as to how to use the spaces. In support, Riverview points to a statement by the Board's attorney, John Dineen, made at a special meeting:

> The parking spaces that are at issue here are [fifty] parking spaces proposed in fact by the municipality of North Bergen. North Bergen is going to be responsible as to how it permits or uses it or however [it] charges for it but it has nothing to do with the development.

At another point, Dineen stated "[a]s a condition of the purchase [in 2005] . . . there was a requirement that [Riverview] give or transfer to the borough [fifty] parking spaces."  Dineen's statements are evidence the Township had discretion as to how to use the spaces.

Moreover, according to Riverview, the fifty spaces are a "quasi-public" use permitted by the Township's master plan as part of a PURD, which "may include appropriate commercial or public or quasi-public uses, all primarily for the benefit of the residential development." Thus, presumably, public parking, if used to benefit the residential development, would be permitted as part of a PURD.

Plaintiff also argues that a parking garage was not an accessory use permitted in the P-1 zone because it was not subordinate to the principal use of the building. Plaintiff posits that parking for residents would be an accessory use, but paid parking for non-residents would not. Plaintiff emphasizes that a parking garage is not accessory to the primary use of Riverview's project because it had no real relationship to or interdependence with the project.

In support, plaintiff cites <u>Nuckel v. Borough of Little Ferry Planning Board</u>, 208 N.J. 95, 104 (2011) (finding that constructing a driveway on neighboring lot was not an accessory use); <u>Wyzykowski v. Rizas</u>, 132 N.J. 509, 518-21 (1993) (holding that apartments

were not an accessory use in a commercial zone because they bore no relationship to principal commercial use and were not permitted by ordinance); Charlie Brown, 202 N.J. Super. at 325 (providing that employees' sleeping quarters on the premises of a restaurant is not reasonably related or incidental to operation of restaurant under present day standards); and Zahn v. Board of Adjustment of Newark, 45 N.J. Super. 516, 520-22 (App. Div. 1957) (finding that designating room in multi-family residence as garment-cleaning depot was business not incidental to operation of apartment building).

However, those cases all involved accessory uses that the courts determined were not subordinate to the principal uses. Here, the judge determined the issue was not ripe for adjudication because it was unclear how the Township intended to use the spaces. In addition, public parking is an accessory use to a high-rise residential building regardless of who owns the spaces.

We agree that parking would be an accessory use in the P-1 zone because a PURD "may include appropriate commercial or public or quasi-public uses." Parking would certainly be an accessory use to a commercial, public or quasi-public use. Further, paid parking for guests of residents would benefit residents of the building. Nevertheless, as the judge correctly determined, until the parking spaces are constructed, it is impossible to know how

the Township intends to use them. This issue clearly was not ripe for adjudication.

                                    V.

Plaintiff contends the Board's grant of a building coverage variance was not supported by the record and is arbitrary, capricious, and unreasonable. The record shows otherwise.

Personal hardship is irrelevant to whether to grant a variance under N.J.S.A. 40:55D-70(c)(1). Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 53 (1999). The correct focus is whether "strict enforcement of the ordinance would cause undue hardship because of the unique or exceptional conditions" of the property. Ibid.

As noted, Table 3.10.a, supplementing NBZO 3.10(a) and NBZO 11.3(a)(3), permitted building coverage of no more than 35%, not including lands under water. Riverview requested a variance for building coverage of 46.6%. The Board granted the variance because of the unusual shape of the property and the fact that significant acreage was underwater. The judge affirmed because the Board's determination was supported by credible evidence.

Plaintiff argues that all property in the P-1 zone included lands under water and, therefore, the judge should not have made an exception for Riverview. Plaintiff asserts that NBZO 11.3(a)(3) expressly excluded lands under water for purposes of calculating building coverage. Plaintiff cites Isko v. Planning Board of

33                                              A-0206-15T1

Township of Livingston, 51 N.J. 162, 174 (1968), overruled in part by Lang, 160 N.J. 41, for the proposition that when a property is similar to other properties in the zone, it should not be given a hardship exception pursuant to N.J.S.A. 40:55D-70(c)(1).

Plaintiff argues the property is similar to others in the P-1 zone. However, the record is devoid of evidence of the shape or percentage of underwater acreage for other parcels of land in the P-1 zone, making it impossible to determine similarity. Even if there was evidence of other parcels in the P-1 zone that contained underwater acreage, here, approximately nineteen of the twenty-six acres were under water, leaving only about six acres available for construction. There is no evidence of a similar property in the record.

In addition, the property was shaped unusually with its width ranging from ninety to 420 feet with a midpoint depth of 260 feet. Because the majority of the property was submerged, and because the property was long and narrow with widely varying depths, it is impossible to ascertain to what extent it was similar or dissimilar to other P-1 zone properties.

Moreover, the project complied with most Township bulk requirements. For example, it met the requirements for front setback; side and rear yards; maximum impervious lot coverage; height; landscaping; open air and space; and the number of parking

spaces.    Further,  Table  3.10.a  permitted  up  to  seventy-five dwelling units per acre but Riverview's proposal was significantly lower.

Moreover,  the  building  coverage  variance  became  necessary, in part, because of the parking garage.   If parking was located on  the  surface,  less  of  the  lot  would  have  been  covered  by  a building.    However,  as  Riverview  noted,  the  parking  garage  was beneficial to the community because it hid cars and garbage pickup from  view.    Lastly,  the  variance  required  a  relatively  small adjustment given that NBZO 3.10 permitted building coverage of 35% and  Riverview's  application  proposed  building  coverage  of  46%. For  these  reasons,  it  was  not  arbitrary,  capricious,  or unreasonable for the Board to grant the building coverage variance.

Plaintiff  argues  that  Riverview  never  demonstrated  it  could not  design  a  building  that  complied  with  the  requirements  for building coverage.  However, despite the property's odd shape, the project met most Township requirements.   It was only because of the unusual topography that the variance was necessary.   Further, Riverview satisfied the positive and negative criteria.

Given the evidence of the unusual shape and topography of the site,  we  conclude  the  Board's  grant  of  the  building  coverage variance  was  not  arbitrary,  capricious,  or  unreasonable  and  was supported  by  the  record.    The  project  largely  met  Township

A-0206-15T1

requirements, and building coverage limitations were challenging because of the unusual shape of the property. Accordingly, the judge correctly affirmed the Board's grant of the building coverage variance.

## VI.

Plaintiff contends the Board's grant of the lighting variance and omission of the ten-foot landscaped buffer was erroneous because these deviations demonstrated the property was being overdeveloped. This contention lacks merit.

The Board granted the lighting variance because it was necessary for security reasons. It also permitted Riverview to omit the ten-foot landscaped buffer on the northern property border because, instead, the project would provide an eight-foot wide sidewalk leading to the river walkway. The judge correctly found the Board's decisions on lighting and the landscaped buffer were supported by credible evidence.

Plaintiff argues the lighting variance and the absence of the landscaped buffer only became necessary because Riverview designed an oversized building. However, the landscaped buffer was omitted not because of the building, but because the project provided a wide sidewalk leading to the river. The extra lighting was necessary for safety reasons. These accommodations were not because the building was oversized, but because of logistical and

security concerns.

Plaintiff argues that the testimony about the need for more intense lighting was a net opinion not substantiated with evidence. Plaintiff asserts that nothing in the record supports the need for more intense lighting and therefore, the grant of the lighting variance was arbitrary and capricious. Plaintiff is wrong.

Experts must base their opinions on facts, but bare conclusions unsupported by factual evidence are inadmissible "net opinions." State v. Townsend, 186 N.J. 473, 494 (2006). Remick, a licensed engineer, opined that more intense lighting was necessary to promote vehicular safety at driveway intersections and in parking areas. McGrath, the board's engineer, agreed, stating his only concern was the possibility of too much light spillage onto the neighboring property. Remick's opinion, therefore, was not a net opinion. Remick was a licensed professional engineer and his opinion was based on the fact that the driveway areas would not have sufficient lighting.

Plaintiff argues the Board attempted to rezone the area by granting variances. In support, plaintiff cites Ten Stary Dom Partnership, 216 N.J. at 20-26, which involved a variance to build a single-family home on a lot zoned for residential use which had insufficient frontage. The Court explained that different variances implicate different aspects of a zoning plan. Id. at

37

32. For example, a variance for setback requirements might trigger a concern with light, air and open space, while a variance for building coverage would trigger a concern for drainage. Ibid.

Here, the Board considered the effect of each variance on the zoning plan and found they would not negatively impact the plan. Moreover, the project largely complied with bulk requirements and variances were needed for only minor issues that promoted safety and were aimed at satisfying the positive and negative criteria, given the odd shape of the property. Further, other than the absence of the ten-foot landscaped buffer, the requirements for landscaping, open air and population density were amply satisfied. Accordingly, the judge did not err in affirming the Board's grant of the lighting variance and the omission of the ten-foot landscaped buffer.

## VII.

The judge found the evidence supported the Board's finding that Riverview satisfied the negative criteria. The judge determined the Board correctly relied on McSweeney's expert opinion that the project did not violate the master plan or undermine the zoning intent.

Plaintiff contends that Riverview did not satisfy the negative criteria. Citing Medici v. BPR Co., 107 N.J. 1, 21-22 (1987) (requiring enhanced proofs that negative criteria were met

when granting use variance), plaintiff argues the Board merely recited language about satisfying the negative criteria, but did not actually insure that the negative criteria were met. <u>Medici</u> involved the grant of a use variance and not a bulk variance. <u>Ibid.</u> In any event, plaintiff posits the Board did not actually analyze the facts in the record, mentioned the master plan but did not discuss what it actually required, and did not address the substantial negative impact on the intent and purpose of the zone plan. Also, plaintiff argues that Riverview experts gave net opinions because they did not provide the "whys and wherefores" to support their views.

To satisfy the negative criteria, the applicant must establish that the variance "can be granted without substantial detriment to the public good" and that it will not "substantially impair the intent and the purpose of the zone plan and zoning ordinance." <u>Sica</u>, 127 N.J. at 156. Here, the Board carefully considered the evidence presented over the course of seven years, including extensive testimony regarding the public good, the intent and purpose of the zone plan and zoning ordinances, views, landscaping, traffic, parking, the river walkway, and preservation of open space, air, and light. The resolution discussed the positive and negative criteria. We disagree that the Board merely recited language. Rather, the Board analyzed, discussed, and

39

considered the positive and negative criteria.

Plaintiff argues the Board ignored the policy behind the building orientation requirement that the longest dimension of the building should be oriented east-west to preserve the views of the river and the New York skyline. Plaintiff posits the improperly oriented building does not protect visual access to the area, which the master plan and the zoning ordinances sought to protect.

Plaintiff's argument is without merit, as the building towers, which affected the views, were oriented correctly in accordance with Township ordinances. Moreover, as the Board stated, the building orientation and view corridor requirements should be read in conjunction, and here, the view corridor provided by Riverview was significantly wider than what was required. Any type of development of the property would have affected the river views and some level of obstruction was permissible so long as Township ordinances were respected. The project complied with Township ordinances aimed at protecting the view and did not negatively affect the view.

We reject plaintiff's argument that the Board ignored evidence from Steck that view of the river was a significant part of the Township's zoning ordinances and master plan. The Board's summary of evidence included Steck's statement and discussion of the master plan. In addition, in its resolution, the Board

40

specifically found the master plan and Township ordinances were aimed at preserving the view, and quoted the same section of the master plan that Steck cited.

Plaintiff also argues the Board ignored evidence presented by Helmstetter that the value of plaintiff's townhouses would diminish by $5 million (collectively) or $200,000 per townhouse. However, the Board included Helmstetter's findings in its summary of the evidence considered and was not required to rely on Helmstetter.

Moreover, even though plaintiff's properties would decline in value, the bulk requirements were largely met by the project. Further, as the judge correctly noted, In Re Riverview Development, 411 N.J. Super. at 434-35, holds that a plaintiff may not prevent a zoning-compliant structure just because it would block the plaintiff's view. In addition, "collateral economic impacts [on] surrounding properties" because of "an otherwise-lawful building are part and parcel of the social compact." Id. at 435.

Plaintiff complains about McSweeney's statement that the project satisfied the negative criteria because it was a permitted use in the P-1 zone. Plaintiff argues this statement incorrectly implies that any permitted use satisfies the negative criteria. However, notwithstanding McSweeney's statement, the record confirms that Riverview satisfied the negative criteria.

Plaintiff also complains about McSweeney's concession that he had not read the master plan. However, McSweeney stated that he looked at the master plan and the master plan 2003 reexamination report. He was also well-versed in Township ordinances and understood the Township's priority of preserving the view. Thus, he was familiar with the master plan and Township ordinances. His statement was correct that the project complied with the goal of the Township ordinances and master plan that views of and access to the river should be protected.

Plaintiff also complains about the judge's reliance on Chirichello v. Zoning Board of Adjustment, 78 N.J. 544, 557 (1979). The judge cited Chirichello for the proposition that "the compliance with the permitted use and other bulk requirements of the ordinance requires 'some indicia that the zone plan and zoning ordinance may not have been substantially impaired by granting the variance.'" We agree with the judge that general compliance with the zone plan indicates the ordinance and master plan were not substantially impaired by the granting of the variance.

Plaintiff believes the Township ordinance contemplates a smaller building oriented in the correct direction. However, as noted, the project complied with side and rear yard setback and height requirements. The only area where the project exceeded the size requirement was building coverage, and even this aspect was

42

relatively minor and a result of the parking garage. Given the topography and unusual dimensions of the lot, we do not agree with plaintiff's contention that the building was oversized or the Township ordinances envisioned a smaller building. The project largely complies with Township requirements.

## VIII.

Lastly, plaintiff contends the Board's resolution failed to include statutorily required findings for a planned development. We disagree.

NBZO 10.8 required the Board to make findings about compliance with Township ordinances and the MLUL, the adequacy of open space, provisions for public services, vehicular and pedestrian traffic, light and air, recreation and physical enjoyment, and the development's impact on the area. In addition, N.J.S.A. 40:55D-45 required the board to make the following findings:

> a. That departures by the proposed development from zoning regulations otherwise applicable to the subject property conform to the zoning ordinance standards . . . of this act;
>
> b. That the proposals for maintenance and conservation of the common open space are reliable, and the amount, location and purpose of the common open space are adequate;
>
> c. That provision through the physical design of the proposed development for public services, control over vehicular and pedestrian traffic, and the amenities of light

43

and air, recreation and visual enjoyment are
adequate;

d. That the proposed planned development
will not have an unreasonably adverse impact
upon the area in which it is proposed to be
established;

e. In the case of a proposed development
which contemplates construction over a period
of years, that the terms and conditions
intended to protect the interests of the
public and of the residents, occupants and
owners of the proposed development in the
total completion of the development are
adequate.

The Board's resolution included findings on the following
matters: preserving the view pursuant to Township ordinances and
the master plan; the positives outweighed the negatives; the odd
shape of the parcel; the lighting; the number and size of parking
spaces; security; the MLUL; the ten-foot landscaped buffer was not
necessary because of the eight-foot sidewalk accessing the
riverfront; public access to the river and open space; rear and
side setback; density; landscaping; vehicular security, deliveries
and visitors; and a safe traffic plan.

Plaintiff argues the resolution did not use terms such as
"adverse impact," "conservation" and "maintenance," and those
terms were used in N.J.S.A. 40:55D-45 to refer to the protection
of open space, light and air. Even though the resolution did not
include those exact terms, it repeatedly emphasized the

44                                                    A-0206-15T1

preservation of space, light, and air. It was not necessary to utilize that exact language. The contents of the resolution satisfied the statute and ordinance.

Plaintiff argues that the Board's resolution did not make specialized findings that the general welfare would be protected by the high density residential development. It is true the resolution did not make specialized findings about the protection of the general welfare. Nevertheless, the resolution extensively addressed views and public access to the river, which were significant aspects of protecting the public welfare.

Plaintiff again argues the Board did not evaluate the unrebutted testimony from Helmstetter and Steck that the variances would adversely affect neighboring property values. As noted, the Board mentioned this evidence but did not rely upon it. Also, the project complied with most Township requirements notwithstanding the adverse impact to plaintiff's property values.

Plaintiff takes issue with the court's reliance on <u>In re Riverview Development</u>, 411 N.J. Super. at 435, because according to plaintiff, the project is not zoning-compliant. However, the project generally complies with bulk requirements, and only required a relatively small number of variances for relatively insignificant deviations from the ordinances.

Plaintiff also argues that <u>In re Riverview Development</u> addressed issues pertaining to the DEP's approval for waterfront development and not whether the board should consider plaintiff's losses of view and property value. <u>Ibid.</u> However, that case did not address the merits of site plans or variance applications. <u>Ibid.</u> Nevertheless, it stands for the proposition that "[a]bsent an enforceable deed restriction or easement, [a plaintiff may not] . . . prevent any party--whether it be a private or public developer--from building a zoning-compliant structure" because it will block views. <u>Ibid.</u>

Finally, plaintiff argues that construction of the project will have an adverse impact on the surrounding areas. However, the Board considered extensive evidence about views, traffic, air light and landscaping and correctly found the positive criteria outweighed the negative.

We conclude that the judge correctly affirmed the Board's decision. The Board's decision was not arbitrary, capricious, or unreasonable, and was amply supported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0206-15T1